UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-24588-CIV-UNGARO/O'SULLIVAN

CARNIVAL CORPORATION,

     Plaintiff,

v.

TAMMY MCCALL d/b/a
AMBER COVE ADVENTURES,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20). This motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. See Order (DE# 95, 3/11/20). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20) be **GRANTED in part and DENIED in part** for the reasons stated herein.

## BACKGROUND

On March 11, 2020, the plaintiff filed the instant motion. See Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20) (hereinafter "Motion"). The defendant filed a response in opposition on May 11, 2020. See Defendant's Response

to Plaintiff's Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel

Defendant to Provid[e] Judgment Debtor Fact Information (DE# 104, 5/11/20)

(hereinafter "Response"). On May 13, 2020, the defendant filed a Corrected Notice of

Filing (DE# 106, 5/13/20) related to the response. The plaintiff filed its reply on May 14,

2020. See Reply Brief in Support of Plaintiff's Verified Motion to Enforce Injunction, for

Contempt, for Sanctions, and Motion to Compel Defendant to Provide Judgment Debtor

Fact Information (DE# 107, 5/14/20) (hereinafter "Reply"). The plaintiff also filed Exhibit

1 to the Declaration of David K. Friedland under seal. See Sealed Bank Records (DE#

110, 5/14/20).

In a separate Order, the undersigned granted the defendant's Motion for Leave

to File Supplemental Declaration in Response (DE# 112, 5/19/20). In accordance with

that Order, the undersigned has considered the Supplemental Declaration of Jill

"Tammy" McCall (DE# 112-1, 5/19/20) in issuing this Report and Recommendation.

This matter is ripe for adjudication.

## STANDARD OF REVIEW

Civil contempt is the penalty for disobeying an injunction. Reynolds v. Roberts,

207 F.3d 1288, 1298 (11th Cir. 2000). A district court's power to find a party in civil

contempt for disobeying court orders stems from its inherent power to enforce

compliance with its lawful orders. Citronelle-Mobile Gaterhin, Inc. v. Watkins, 943 F.2d

1297, 1301 (11th Cir. 1991). "A finding of civil contempt – willful disregard of the

authority of the court – must be supported by clear and convincing evidence." Riccard v.

Prudential Ins. Co., 307 F.3d 1277, 1296 (11th Cir. 2002). Civil contempt is appropriate

upon a finding that: "(1) the allegedly violated order was valid and lawful; (2) the order

was clear and unambiguous; and (3) the alleged violator had the ability to comply with

the order." Riccard, 307 F.3d at 1296. "Once it has been shown that a violation of the

order has occurred, the burden shifts to the contemnor to demonstrate an impossibility

of compliance." In re Lawrence, 279 F.3d 1294, 1299 (11th Cir. 2002).

An evidentiary hearing is not required if there are no disputed factual matters.

See National Union Fire Ins. Co. v. Olympia Holding Corp., 140 Fed. App'x 860, 864

(11th Cir. 2005) (holding that court did not abuse its discretion by failing to conduct an

evidentiary hearing and finding the defendants in civil contempt).

## ANALYSIS

### 1.    Permanent Injunction

On January 9, 2020, the Court entered a permanent injunction against the

defendant and awarded the plaintiff $40,000 in statutory damages. See Order of

Permanent Injunction and Monetary Damages (DE# 89, 1/9/20) (hereinafter "Permanent

Injunction").

The Permanent Injunction required the defendant to perform the following acts

within twenty (20) days after the issuance of the injunction:

> (a) Surrender to Plaintiff's attorney or destroy any existing marketing,
> advertising or promotional materials in the nature of signs, labels,
> packages, stickers, decals, wrappers and advertisements which bear or
> include an Accused Mark, whether in tangible or electronic form;
>
> (b) Transfer to Plaintiff, and assign all rights in and to the domain names
> ambercoveadventures.com, ambercoveshoreexcursions.com,
> ambercoveatv.com, ambercovetour.com and any other domain that
> comprises, in whole or in part, Plaintiff's AMBER COVE trademark, and
> deliver to Plaintiff all documents evidencing ownership of such domain
> names;
>
> (c) Cancel any other online account or page (including, without limitation,
> any social media or file sharing account or page) that uses an Accused
> Mark or the terms AMBER COVE;

(d) Change the fictitious name of AMBER COVE ADVENTURES to comply with Section 1(a) of this Permanent Injunction, namely, remove any reference to the Accused Mark and the terms AMBER COVE, and file the appropriate amendment with the Florida Department of State;

(e) Expressly abandon with prejudice the pending U.S. federal trademark application for the AMBER COVE ADVENTURES, App. Ser. No. 88/173,205;

(f) Dismiss with prejudice Consolidated Opposition Nos. 91244600 and 91244651, pending before the Trademark Trial and Appeal Board; and

(g) Send a letter to all of their U.S. customers who purchased Defendant's infringing services, informing such customers that Defendant's use of the mark AMBER COVE is unlawful.

Id. at ¶2.

The Permanent Injunction also required that within thirty (30) days, the defendant "file with the Clerk of this Court and serve on Plaintiff, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction, pursuant to 15 U.S.C. § 1116." Permanent Injunction (DE# 89 at ¶3, 1/9/20).

At the time of the filing of the instant Motion on March 10, 2020, the defendant had not completed the specific acts required by the Permanent Injunction (DE# 89, 1/9/20). The defendant had not surrendered to the plaintiff marketing, advertising or promotional materials (whether in tangible or electronic form) or certified their destruction. See Declaration of David K. Friedland (DE# 94-1 at ¶3, 3/10/20). The www.ambercoveadventures.com website was still operational. Id. at ¶4. The defendant had not transferred the domain names listed in the Permanent Injunction. Id. at ¶7. The defendant had not dismissed her trademark application before the United States Patent & Trademark Office ("USPTO") or her two pending oppositions before the Trademark Trial and Appeal Board ("TTAB") of the USPTO. Id. at ¶¶ 5, 8. The defendant had not

cancelled her fictitious name registration for Amber Cove Adventures with the Florida Secretary of State. Id. at 6. The defendant had not provided the plaintiff with any letters advising consumers in the United States of the defendant's unauthorized use of the Accused Mark. Id. at ¶9. Lastly, the defendant had not filed "a report in writing, under oath, setting forth in detail the manner and form in which Defendant ha[d] complied with the . . . injunction, pursuant to 15 U.S.C. § 1116." Permanent Injunction (DE# 89 at ¶3, 1/9/20).

The plaintiff now seeks "an order enforcing the permanent injunction, finding Defendant Tammy McCall . . . in contempt of Court, award[ing] Carnival sanctions, including, but not limited to damages, costs and attorney's fees, and . . . compel[ing] McCall to complete the judgment fact information sheet and produce documents as required by Fla.R.Civ.P.1.560 and 1.977." Motion at 1.

The defendant argues that no sanctions should be imposed because the defendant has complied with the portions of the Permanent Injunction under her control. Response at 5. The defendant also argues that "Carnival's failure to act in good faith to resolve the issues beforehand and to answer Defendant's requests for cooperation precludes" an "award reasonable expenses including reasonable attorneys' fees for contempt." Id. at 3.

In its Reply, the plaintiff argues that the Court should not give weight to any belated compliance with some of the requirements of the Permanent Injunction (DE# 89, 1/9/20) because doing so would only "encourage dilatory tactics." Id. at 3 n. 2.

**2.    Defendant's Non-Compliance with the Permanent Injunction**

As noted above, the Permanent Injunction (DE# 89, 1/9/20) required the

defendant to perform certain acts within a specified time period. As outlined below, the defendant failed to timely comply with the requirements of the Permanent Injunction.

The defendant states that her compliance with the Permanent Injunction was impeded by "a combination of many circumstances beyond [her] control." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶7, 5/11/20). Specifically, the defendant states that she "began experiencing flu-like symptoms" the first week of 2020. Id. at ¶11. The defendant's health continued to worsen, affecting her ability to work and "caus[ing her] to drastically limit [her] contact with others, including independent contractors." Id. at ¶¶ 11-12. In March 2020, the defendant "experienced labored breathing, debilitating headaches, chills, drenching sweats, and dehydration." Id. at ¶15. The defendant "self-treated with antivirals, antibiotics, homeopathic remedies, and slowly recovered." Id.

In the interim, in late February 2020, the first COVID-19 cases were reported in the Dominican Republic and the president "announced a series of measures intended to stop the spread of the virus, banned all travel into and severely restricted travel out of the count[r]y, and effectively closed the country's borders by ordering all land, sea and air borders to be closed as of March 19, 2020." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶17, 5/11/20).

In response to the impending border closure, on March 17, 2020, the defendant left the Dominican Republic and self-quarantined in Ft. Lauderdale, Florida. Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶19, 5/11/20). On April 7, 2020, the defendant traveled to Arizona where she self-quarantined until May 5, 2020. Id. at ¶¶ 19-20. On May 5, 2020, the defendant returned to Florida where she "shelter[ed] in place." Id. at ¶20.

### a.      Surrendering or Destroying Marketing, Advertising or Promotional Materials

The Permanent Injunction required the defendant to "[s]urrender to Plaintiff's attorney or destroy any existing marketing, advertising or promotional materials in the nature of signs, labels, packages, stickers, decals, wrappers and advertisements which bear or include an Accused Mark, **whether in tangible or electronic form**." Permanent Injunction (DE# 89 at ¶2(a), 1/9/20) (emphasis added).

At the time the instant Motion was filed, the defendant had not turned over any existing marketing, advertising or promotional materials bearing the Amber Cove name or certified the destruction of these materials. See Declaration of David K. Friedland (DE# 94-1 at ¶3, 3/10/20). The defendant states that "[a]s of the Court's January 9, 2020 Order, [she] did not have any promotional materials or marketing materials that bear or display the 'Accused Mark' in **tangible form**. Therefore, this mandate of the Order required no additional action on [her] part." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶23, 5/11/20) (emphasis added).

The defendant does not address the Permanent Injunction's requirement that she also surrender or destroy any marketing, advertising or promotional materials in "electronic form." Permanent Injunction (DE# 89 at ¶2(a), 1/9/20). Because the defendant does not address her surrender or destruction of marketing, advertising or promotional materials in **electronic format**, the undersigned cannot conclude that the defendant has complied with the requirements of paragraph ¶2(a) of the Permanent Injunction.

### b.      Transfer of Website Domain Names

The Permanent Injunction required the defendant to transfer and assign to the

plaintiff all rights in four domain names (ambercoveadventures.com, ambercoveshoreexcursions.com, ambercoveatv.com, ambercovetour.com)[1] and "any other domain that comprises, in whole or in part, Plaintiff's AMBER COVE trademark." Permanent Injunction (DE# 89 at ¶2(b), 1/9/20).

The defendant states in her declaration that due to the COVID-19 pandemic and the defendant's own health issues, she "reduced [her] regular personal contact . . . [with] a Dominican Republic national with whom [she] contracted to manage the subject domain names and social media accounts, and who possessed the passwords and thus had the sole ability to "unlock" the domains for transfer." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶13, 5/11/20).[2] Nonetheless, in "January and February 2020, [the defendant] made numerous calls to that contractor in order to coordinate the process of unlocking the four subject domain names so they could be transferred to the Plaintiff." Id. at ¶14.

As of the filing of the reply on May 14, 2020, the defendant had not completed the transfer of the domain names to the plaintiff.

The parties strongly dispute the reason why the domain names were not transferred. The defendant asserts that neither she nor her employees are "technologically proficient" and that she had requested the plaintiff's counsel's

---

[1] As late as March 2020, the www.ambercoveadventures.com website was still operational. See Declaration of David K. Friedland (DE# 94-1 at ¶4, 3/10/20). In her declaration, the defendant represents that the websites at issue have now been taken down. Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶24, 5/11/20).

[2] According to the defendant, "business in the Dominican Republic is done in person far more than it is in the United States." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶12, 5/11/20).

assistance in completing the transfer. Declaration of Jill "Tammy" McCall (DE# 104-1 at

¶33, 5/11/20). According to the defendant, the plaintiff's counsel refused to assist her on

multiple occasions. Id. at ¶¶33-34, 37, 42. The plaintiff refers to the assertion that it has

been uncooperative in assisting with the transfer of the domain names as "a

fabrication." Reply at 5.

The defendant's counsel attests that on March 6, 2020, the defendant's counsel

advised the plaintiff's counsel that the defendant "needed assistance in transferring the

subject domain names to Plaintiff." Declaration of Steven W. Teppler (DE# 104-11 at

¶2, 5/11/20). The defendant's counsel further states that during a telephone

conversation on March 16 or 17, 2020, the plaintiff's counsel told the defendant's

counsel that the client (Carnival) refused to provide assistance. Id. at ¶9. The

defendant's counsel also states that during a conversation on May 5, 2020, the

plaintiff's counsel again "informed [him] that his client expressly refused to and would

not assist Ms. McCall in the transfer [of the domain names], and that she, or [her

counsel], should figure out how to do so." Id. at ¶15.

Nonetheless, on March 17, 2020 and on May 5, 2020, the plaintiff's counsel

provided the defendant with different sets of instructions[3] on how to effectuate the

transfer of the domain names. Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶¶ 34-

35, 39, 5/11/20). The defendant made several attempts to complete the transfers by

following the written instructions provided by the plaintiff's counsel but was unable to

---

[3] The plaintiff's counsel initially provided instructions for the transfer of domain names
hosted by GoDaddy. However, the subject domain names were hosted by IONOS. The
plaintiff subsequently provided a second set of instructions for the transfer of domain
names hosted by IONOS. See Declaration of David K. Friedland (DE# 107-3 at ¶6,
5/14/20); Declaration of Steven W. Teppler (DE# 104-11 at ¶16, 5/11/20).

complete the transfer of the domain names. Id. at ¶40.

The plaintiff's counsel disputes the defendant and defendant's counsel's characterization of the parties' communications concerning the transfer of the domain names. The plaintiff's counsel states that the plaintiff and the plaintiff's attorneys did not refuse to cooperate with the defendant because "[a]t no point in any of the various communications referenced by [defendant's counsel] . . .  did [defendant's counsel] identify the substance of any assistance he or his client required from Carnival in order to comply with the domain transfer element of the Permanent Injunction." Declaration of David K. Friedland (DE# 107-3 at ¶4, 5/14/20). The plaintiff's counsel further states that on March 17, 2020, he provided the defendant's counsel with the plaintiff's GoDaddy account number and "step-by-step instructions for Defendant to follow in order to transfer the domain name[s]." Id. at 5, 7. The plaintiff's counsel states that "[w]ith these instructions, all of which relate to actions taken by the domain owner, Defendant should be able to obtain the Authorization Code necessary for Carnival to add the domains to its GoDaddy account" and that "Defendant ha[d] not provided Carnival any Authorization Codes for the domain transfers." Id. at 8.

In her Supplemental Declaration, the defendant states that the authorization codes have now been sent. Supplemental Declaration of Jill "Tammy" McCall (DE# 112-1 at ¶10, 5/19/20).

Based on the parties' representations, it is unclear whether the defendant has belatedly complied with the requirement that she transfer the domain names to the plaintiff as provided in paragraph ¶2(b) of the Permanent Injunction. The defendant should be required to file a written report, under oath, see discussion infra, confirming

her compliance with this and other requirements of the Permanent Injunction (DE# 89, 1/9/20).

### c.      Cancellation of Online Accounts or Pages

The Permanent Injunction required the defendant to cancel online accounts or pages that use the Accused Mark. <u>See</u> Permanent Injunction (DE# 89 at ¶2(c), 1/9/20).

In her declaration, the defendant asserted that "as of May 1, 2020, the subject social media content has been removed pursuant to the Order." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶25, 5/11/20). However, the plaintiff's Reply shows that some of the defendant's social media accounts continued to use the Accused Mark. <u>See</u> Reply at 4.

In her supplemental declaration, the defendant blames her contractor for failing to remove the remaining online accounts:

> To the extent the Court might infer from the submission by Carnival that I was aware of social media content found online that does not comply with this Court's Permanent Injunction, the Court should be clear that **I had requested that my Dominican independent contractor deactivate those accounts and had no control over how quickly he would do so in light of the considerations set forth in my first Declaration**. I have now been advised that the YouTube channel and my Dominican Republic company's Facebook pages and photos included in the submissions by Carnival's counsel are no longer online.

Supplemental Declaration of Jill "Tammy" McCall (DE# 112-1 at ¶6, 5/19/20) (emphasis added).

The undersigned notes that in her initial declaration, the defendant represented to the Court that "as of May 1, 2020, the subject social media content has been removed pursuant to the Order"[4] without verifying the accuracy of that statement. The

---

[4] Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶25, 5/11/20).

defendant blames her contractor for not deactivating the accounts quickly enough. Supplemental Declaration of Jill "Tammy" McCall (DE# 112-1 at ¶6, 5/19/20). However, the defendant's initial representation to the Court did not state that she was in the process of removing the social media content. Rather, the defendant unequivocally (and incorrectly) represented to the Court that "the subject social media content ha[d] been removed." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶25, 5/11/20). The defendant could have easily verified[5] this information before making a representation to the Court which turned out to be incorrect. Moreover, although the defendant specifically references Facebook, YouTube and photographs, her supplemental declaration does not address the Apple Podcast, Tripadvisor and Stitcher.com screenshots which are attached to Exhibit B (DE# 107-2) of the Reply. Therefore, the undersigned cannot conclude that the defendant has complied with the requirements of paragraph ¶2(c) of the Permanent Injunction.

### d.   Change of Fictitious Name

The Permanent Injunction required the defendant to change the fictitious name Amber Cove Adventures and file the appropriate amendment with the Florida Department of State. See Permanent Injunction (DE# 89 at ¶2(d), 1/9/20). On May 8, 2020, the defendant submitted the paperwork and filing fee for a fictitious name cancellation. Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶26, 5/11/20). On May 13, 2020, the defendant filed a screenshot of the sunbiz.org website showing the status

---

[5] Although in another section of her declaration, the defendant states that she is "not technologically proficient," Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶32, 5/11/20), anyone with the ability to access the internet could have easily verified whether defendant's online accounts still displayed the Accused Mark.

of the fictitious name Amber Cover Adventures as cancelled. <u>See</u> Corrected Notice of Filing (DE# 106-1, 5/13/20).

The undersigned concludes that the defendant has belatedly complied with the requirement of paragraph 2(d) of the Permanent Injunction.

### e.  Abandon with Prejudice the U.S. Federal Trademark Application for Amber Cove Adventures

The Permanent Injunction required the defendant to abandon with prejudice her pending U.S. federal trademark application for the AMBER COVE ADVENTURES, App. Ser. No. 88/173,205. <u>See</u> Permanent Injunction (DE# 89 at ¶2(e), 1/9/20).

The defendant states that she filed an express abandonment on May 8, 2020 and that a copy was filed as an exhibit to her Response. <u>See</u> Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶27, 5/11/20).

The undersigned was unable to locate this document in the exhibits filed with the defendant's Response. Nonetheless, the plaintiff did not dispute the assertion that the defendant had abandoned the application in the Reply. Therefore, the undersigned concludes that the defendant has belatedly complied with the requirement of paragraph 2(e) of the Permanent Injunction.

### f.  Dismissal with Prejudice of Oppositions Pending Before the Trademark Trial and Appeal Board

The Permanent Injunction required the defendant to "[d]ismiss with prejudice Consolidated Opposition Nos. 91244600 and 91244651, pending before the Trademark Trial and Appeal Board." Permanent Injunction (DE# 89 at ¶2(f), 1/9/20).

The defendant states that she filed the withdrawals of her oppositions on May 7, 2020. <u>See</u> Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶28, 5/11/20).

The undersigned concludes that the defendant has belatedly complied with the requirement of paragraph 2(f) of the Permanent Injunction.

### g.     Letters to U.S. Customers

The Permanent Injunction required the defendant to "[s]end a letter to all of [its] U.S. customers who purchased Defendant's infringing services, informing such customers that Defendant's use of the mark AMBER COVE is unlawful." Permanent Injunction (DE# 89 at ¶2(g), 1/9/20). The Permanent Injunction did not specify the manner in which the letter was to be sent.

The defendant states in her declaration that she does not have any physical addresses for her customers because they purchase their tours/excursions through online third-parties and these third-parties do not provide her with private guest information. See Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶29, 5/11/20). The defendant's Response further states that after she executed her declaration, "her counsel was informed that [the defendant] ha[d] approximately 65 email addresses of people who booked directly through the subject web site" and the defendant "is in the process of sending emails to those people in the United States." Response at 5.

A sample of the email being sent to U.S. customers is attached to the Response. See Exhibit L (DE# 104-12, 5/11/20). It states: "Pursuant to a Florida federal court order, I am required to notify you that our use of the name, Amber Cove Adventuress [sic], was unlawful." Id.

The notice the defendant wishes to provide is narrower than the notice required by the Permanent Injunction (DE# 89 at ¶2(g), 1/9/20).[6] Paragraph 2(g) of the

---

[6] It also contains a typographical error which would have the effect of providing no

Permanent Injunction requires the defendant to "inform[ ] . . . customers that Defendant's use of the mark **AMBER COVE** is unlawful." Id. (emphasis added). The sample notice provided by the defendant states: "Pursuant to a Florida federal court order, I am required to notify you that our use of the name, **Amber Cove Adventuress [sic]**, was unlawful." Id. Even overlooking the typographical error, the term required by the Permanent Injunction ("Amber Cove") is broader than the term the defendant intended to use ("Amber Cove Adventures") in her notice. Therefore, the undersigned cannot conclude that the defendant has complied with the requirements of paragraph ¶2(g) of the Permanent Injunction. The defendant should be required to file a written report, under oath, see discussion infra, confirming her compliance with this and other requirements of the Permanent Injunction (DE# 89, 1/9/20).

### h.   Compliance Report

Paragraph 3 of the Permanent Injunction states that:

> Within thirty (30) days after issuance of this Permanent Injunction, Defendant is ordered to file with the Clerk of this Court and serve on Plaintiff, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction, pursuant to 15 U.S.C. § 1116.

Permanent Injunction (DE# 89 at ¶3, 1/9/20). Thus, the defendant's report was due on Monday, February 10, 2020.[7]

The defendant states that her "Declaration in Support . . . will also serve as the

---

notice to U.S. customers because, to the undersigned's knowledge, the defendant never used the name "Amber Cove Adventuress" in commerce.

[7] The thirtieth day fell on Saturday, February 8, 2020. Thus, pursuant to Rule 6(a)(3)(A) of the Federal Rules of Civil Procedure, the defendant had until Monday, February 10, 2020 to file her report.

report to the Court required by the Court's January 9, 2020 Order." Response at 1. The defendant's declaration was filed approximately three months after the defendant's report was due.

The Court should not accept the Declaration of Jill "Tammy" McCall (DE# 104-1 at 7, 5/11/20) in lieu of a report. As discussed above, the defendant's declaration (and her supplemental declaration) do not make clear whether she has complied with the transfer of the domain names or the notice to U.S. customers. Moreover, the defendant's declaration is unsigned and at least in one instance made a representation without verifying if that representation was accurate.[8]

The Court should require that the defendant comply with the Permanent Injunction by filing "a report in writing, **under oath**, setting forth in detail the manner and form in which Defendant has complied with the foregoing injunction, pursuant to 15 U.S.C. § 1116." Permanent Injunction (DE# 89 at ¶3, 1/9/20) (emphasis added).

### i.    Non-Payment of Statutory Damages

The Permanent Injunction required the defendant to pay statutory damages in the amount of $40,000.00. See Permanent Injunction (DE# 89 at 4, 8/17/20).

The defendant states that she has "no practical ability" to pay the $40,000.00 money judgment. Response at 7. The defendant cites a steady decline in her business and outstanding business debt:

> My business had been falling off since the summer of 2019, when unsubstantiated rumors of deaths in the Dominican Republic attributed to tainted liquor were reported by the media. As reports of COVID-19

---

[8] As discussed above, the defendant represented to the Court that "as of May 1, 2020, the subject social media content has been removed pursuant to the Order." Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶25, 5/11/20). The plaintiff presented screenshots showing this representation was factually incorrect. Reply at 4.

became more frequent in the United States, my business further declined, and came to a complete standstill during the first week of March, 2020. I am currently sheltering in place in Florida, have had no income or revenue since the first week of March, 2020, and I have an outstanding liability to Carnival Corporation in the amount of $70,000 for a $300,000 loan to me for startup costs in connection with shore excursion operations at Carnival's port operations in the Grand Turk Cruise Center, Grand Turk, Turks and Caicos Islands. I also personally guaranteed a maxed-out business line of credit for approximately $30,000 in order to provide services to Carnival Corporation Cruise Line Brands. I am currently living off savings of less than $3,500.

Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶45, 5/11/20).

The plaintiff argues that the Court should disregard the defendant's claims of poverty because they are unsupported. Reply at 7 (stating that "McCall's unsigned supporting affidavit fails to meet her burden of 'adequate proof,' showing 'categorically and in detail' why she is unable to comply with the Court's prior order, and therefore her pleas of poverty should be ignored by the Court"). The plaintiff notes that bank records from November 2019 through March 2020, show "that McCall received approximately $156,000.00 in revenue." Id. (footnote omitted). The plaintiff further notes that of this amount, approximately $146,000.00 "were transferred virtually upon receipt to two separate accounts in McCall's name in trust for her daughter." Id. at 7-8.

In her Supplemental Declaration, the defendant states that the funds "represent[ ] business revenue and not personal income." Supplemental Declaration of Jill "Tammy" McCall (DE# 112-1 at ¶7, 5/19/20). According to the defendant, the funds were used "to pay direct costs and overhead to deliver tours including transportation, guide association, attraction fees, food and beverage, consumables, and other costs" including "payroll, Dominican social security and other benefits, worldwide jurisdiction insurance, local insurance, health insurance, office rents and routine day-to-day business operating expenses." Id. The defendant does not disclose what amount, if any,

was income to the defendant. The defendant further explains that "the revenue received was transferred to an account with a debit card" because "in the Dominican Republic, most expenses are paid in cash or are withdrawn from . . . [a] debit card" and "that the funds were withdrawn within the Dominican Republic in order to pay [the defendant's] suppliers." Id. at 8. Lastly, the defendant states that her daughter is the beneficiary on the bank accounts because the bank asked her for a beneficiary when she opened the accounts. Id. at 9.

It is undisputed that the defendant has not paid the $40,000.00 in statutory damages as required by the Permanent Injunction (DE# 89 at 4, 1/9/20). However, it is not necessary for the Court to resolve the factual dispute concerning whether the defendant has the ability to pay the $40,000.00 because the enforcement of a monetary judgment is not the proper subject of a contempt proceeding. See Combs v. Ryan's Coal Co., 785 F.2d 970, 980 (11th Cir. 1986) (stating that "[i]t is . . . clear that when a party fails to satisfy a court-imposed money judgment the appropriate remedy is a writ of execution, not a finding of contempt.").

In U.S. Commodity Futures Trading Comm'n v. Escobio, for instance, the Eleventh Circuit held that a district court committed reversable error when it sought to enforce a restitution order through its civil contempt power. 946 F.3d 1242, 1255 (11th Cir. 2020). The Eleventh Circuit described the restitution order as "a classic money judgment" because "[i]t provide[d] for a sum certain, non-contingent 'payment of money . . . that the court found to be due and owing.'" Id. at 1253 (quoting Combs, 785 F.2d at 980). Statutory damages have been described as a form of money judgment. See Nat'l Satellite Sports, Inc. v. No Frills Rest., Inc., 15 F. Supp. 2d 1360, 1364 (S.D. Fla. 1998)

(noting that "statutory damages under section 605 [of the Cable Communications Policy Act were] properly characterized as a form of restitution, which is an equitable remedy in the form of a money judgment.").

Accordingly, the Court should not take into account the defendant's failure to pay statutory damages in determining whether to hold the defendant in contempt for the failure to timely comply with other portions of the Permanent Injunction (DE# 89, 1/9/20). Alternatively, even if the Court were to consider the defendant's non-payment of the $40,000.00 in statutory damages, the sanctions sought by the plaintiff and those recommended by the undersigned below would not be different.

**3.    The Defendant Should be Held in Civil Contempt for Failing to Comply with Paragraphs 2 and 3 of the Permanent Injunction (DE# 89, 1/9/20)**

As noted above, civil contempt is appropriate upon a finding that: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous; and (3) the alleged violator had the ability to comply with the order." Riccard, 307 F.3d at 1296. The undersigned finds by clear and convincing evidence that all three prongs have been met.

The Permanent Injunction (DE# 89, 1/9/20) was issued pursuant to the Lanham Act, 15 U.S.C. § 1116, and is a valid and lawful Order of this Court. The Permanent Injunction (DE# 89, 1/9/20) is clear and unambiguous. It expressly enjoined the defendant from using the Accused Mark and listed specific acts the defendant was required to take to ensure compliance.

The defendant failed to timely complete the requirements of paragraphs 2 and 3 of the Permanent Injunction (DE# 89, 1/9/20). The defendant had the ability to comply with the Permanent Injunction (DE# 89, 1/9/20) and has failed to show any valid justification

for her non-compliance.

The defendant blames the delays in complying with the Permanent Injunction (DE# 89, 1/9/20) on the global pandemic, in-person business customs and deteriorating conditions in the Dominican Republic, her own illness, her contractor and the plaintiff's alleged refusal to assist the defendant in transferring the domain names. The undersigned notes that the defendant "began experiencing flu-like symptoms" the first week of January 2020,[9] however, the defendant never sought an extension of time to comply with the terms of the Permanent Injunction (DE# 89, 1/9/20), even when it became clear she would not be able to meet its January 29, 2020 and February 10, 2020 deadlines.

Although the defendant blames the plaintiff for not being able to transfer the domain names and her contractor for the delay in canceling online accounts or pages, the defendant could have timely accomplished other portions of the Permanent Injunction (such as changing the fictitious name, abandoning her U.S. federal trademark application and dismissing her oppositions) with a telephone call to her counsel who was in the United States and not subject to the same constraints and in-person business customs as people residing in the Dominican Republic.

In fact, on March 15, 2020, around the same time the defendant was ill and there were COVID-19 restrictions in the Dominican Republic, the defendant, through attorney Wendy Peterson, was able to file an objection to the dismissal of her trademark opposition proceeding. See Exhibit A to Reply (DE# 107-1, 5/14/20).

Notably, the March 15, 2020 filing undercuts the defendant's assertion that it was

---

[9] Declaration of Jill "Tammy" McCall (DE# 104-1 at ¶11, 5/11/20).

her intent all along to comply with the Permanent Injunction (DE# 89, 1/9/20) and her non-compliance was the result of factors beyond her control. The defendant's objection to the dismissal of the trademark opposition proceeding is inconsistent with her obligation under paragraph 2(f) of the Permanent Injunction which required the defendant by January 29, 2020 to "[d]ismiss with prejudice Consolidated Opposition Nos. 91244600 and 91244651, pending before the Trademark Trial and Appeal Board." Permanent Injunction (DE# 89 at ¶ 2(f), 1/9/20). The March 15, 2020 filing suggests to the undersigned that as late as March 15, 2020, the defendant had not intended to comply with at least this paragraph of the Permanent Injunction.

Lastly, the record remains unclear whether the defendant has surrendered or destroyed all marketing, advertising or promotional materials in **electronic form** as required by paragraph 2(a) of the Permanent Injunction (DE# 89, 1/9/20), completed the transfer of the domain names as required by paragraph 2(b), cancelled or removed all of the online accounts or pages bearing the Accused Mark as required by paragraph 2(c) or sent letters to U.S. customers as required by paragraph 2(g). Moreover, no sworn, written report was filed by the defendant as required by paragraph 3 of the Permanent Injunction (DE# 89, 1/9/20) and the defendant's declaration is a poor substitute for the reasons already discussed in this Report and Recommendation.

In sum, there is sufficient evidence on the record, as outlined above, to show by clear and convincing evidence that the defendant has violated the Permanent Injunction (DE# 89, 1/9/20) and the justifications provided by the defendant are insufficient to absolve her non-compliance with a lawful Order of this Court. Accordingly, the undersigned respectfully RECOMMENDS that the defendant be found in civil contempt

and that sanctions be imposed.

**4.     Recommended Sanctions**

The plaintiff asks that the Court impose the following sanctions: (1) require the defendant to report sales of shore excursions and tours utilizing the Amber Cove name beginning on January 29, 2020[10] including when, to whom and how many were sold along with supporting invoices and receipts; (2) require the defendant to remove all violating uses of the Amber Cove name (whether physical or digital) from the market; (3) impose a $500.00 per day fine, retroactively from January 30, 2020 through the date of compliance and (4) award attorney's fees associated with the instant enforcement proceedings. Reply at 8.

The Eleventh Circuit has made clear that the "[d]istrict courts have broad discretion in fashioning civil contempt sanctions." Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990). Generally, sanctions for civil contempt serve one of the following purposes: (1) to coerce the contemnor into compliance with the Court's order; or (2) to compensate the complainant for losses sustained as a result of the contumacious behavior. United States v. United Mine Workers, 330 U.S. 258, 303-04 (1947).

"When imposing sanctions for civil contempt, a court 'ha[s] numerous options, among them: a coercive daily fine, a compensatory fine, attorneys' fees and expenses . . .  and coercive incarceration.'" Mesa v. Luis Garcia Land Serv., Co., 218 F. Supp. 3d 1375, 1380 (S.D. Fla. 2016) (quoting Citronelle-Mobile Gathering, Inc., 943 F.2d at

---

[10] January 29, 2020 is the date the defendant was to have complied with some of the requirements of the Permanent Injunction. See Permanent Injunction (DE# 89 at ¶2, 1/9/20) (providing the defendant with 20 days to perform certain acts).

1304).

   a.    **Report of Excursions and Tours**

As noted above, the plaintiff asks the Court to require the defendant to report the sales of shore excursions and tours utilizing the Amber Cove name from January 29, 2020 including when, to whom and how many were sold along with supporting invoices and receipts. Motion at 8. The plaintiff notes that it is injured whenever a consumer purchases a shore excursion or tour from the defendant mistakenly believing it to be associated with the plaintiff. Id. at 8-9.

The bank records filed with the Court show that the defendant deposited $39,750.55 in January 2020, $36,850.25 in February 2020 and $37,501.12 in March 2020. See Sealed Bank Records (DE# 110, 5/14/20). [11] The defendant acknowledges that these funds constitute business revenue. Supplemental Declaration of Jill "Tammy" McCall (DE# 112-1 at ¶7, 5/19/20) (stating that the funds "represent[ ] business revenue and not personal income."). Thus, although the defendant asserts that her business has been in a steady decline, these bank records suggests that the defendant has sold some tours and shore excursions during the relevant time period.

Because the Permanent Injunction (DE# 89, 1/9/20) required the defendant to abandon her use of the Amber Cove name by January 29, 2020, the defendant should be required to report to the plaintiff the sales of shore excursions and tours utilizing the Amber Cove name beginning on that date.

The undersigned RECOMMENDS that the defendant be required to produce to

---

[11] Although the bank records themselves were filed under seal, the amounts of the monthly deposits were disclosed in the plaintiff's Reply. See Reply at 7 n.3.

the plaintiff a report of all sales of shore excursions and tours utilizing the Amber Cove name from January 29, 2020 including when, to whom and how many were sold along with supporting invoices and receipts.

### b.      Removal of Unlawful Uses of the Amber Cove Name

The plaintiff asks that the Court order the defendant "to remove all violating uses of AMBER COVE, both physically and digitally, from the market, as specified in the Permanent Injunction, so that use of the mark does not continue." Motion at 8.

The Permanent Injunction already prohibits the defendant from "[u]sing, whether directly or indirectly, the terms AMBER COVE, in whole or in part, AMBER COVE ADVENTURES (the "Accused Mark"), or any other term, name, mark or logo similar thereto or likely to cause confusion therewith" and to surrender or destroy all marketing, advertising or promotional materials whether in tangible and electronic form which bears the Accused Mark. Permanent Injunction (DE# 89 at ¶¶1(a), 2(a), 1/9/20).

Because the Permanent Injunction (DE# 89, 1/9/20) already addresses these concerns, the undersigned finds no use in recommending that the Court again order the defendant to remove all unlawful uses of the Amber Cove name. Rather, the defendant should be coerced into fully complying with the Permanent Injunction (DE# 89, 1/9/20) as discussed below.

### c.      Daily Fine

The plaintiff also asks that the Court impose a $500 daily fine on the defendant, retroactively from January 30, 2020, the date the defendant was to have completed the specific acts required by paragraph 2 of the Permanent Injunction (DE# 89, 1/9/20), through the date the defendant certifies her compliance by filing her report with the

Court. Motion at 8.

As previously discussed, the record remains unclear whether the defendant has complied with some of the requirements of paragraph 2 of the Permanent Injunction[12] and the defendant has not filed a sworn, written report as required by paragraph 3 of the Permanent Injunction (DE# 89, 1/9/20).

"[S]anctions imposed for civil contempt to coerce compliance 'cannot be any greater than necessary to ensure such compliance' and may not be so excessive as to be punitive in nature." Mesa, 218 F. Supp. 3d at 1380 (quoting Citronelle-Mobile Gathering, Inc., 943 F.2d at 1304). Given the delays which have occurred, a daily fine would encourage the defendant to promptly comply with the remaining obligations of the Permanent Injunction. However, the proposed daily rate of $500.00 is excessive. The undersigned finds that a $200.00 coercive daily fine would be sufficient to ensure the defendant's compliance.

Moreover, the daily fine should not be retroactive. While the undersigned finds that the defendant has not provided sufficient justification for her failure to timely comply with the Permanent Injunction (DE# 89, 1/9/20), the undersigned is cognizant of the special circumstances surrounding the global pandemic and the defendant's own illness. Therefore, the undersigned RECOMMENDS that the Court impose a $200.00 daily fine beginning thirty (30) days after the Court's Order on the instant Motion and

---

[12] It is unclear whether the defendant has surrendered or destroyed all marketing, advertising or promotional materials in **electronic form** as required by paragraph 2(a) of the Permanent Injunction (DE# 89, 1/9/20), completed the transfer of the domain names as required by paragraph 2(b), cancelled or removed all of the online accounts or pages bearing the Accused Mark as required by paragraph 2(c) or sent letters to U.S. customers as required by paragraph 2(g).

continuing through the date the defendant files her sworn, written report in accordance with paragraph 3 of the Permanent Injunction (DE# 89, 1/9/20) and complies with all of the other conditions of the Permanent Injunction (DE# 89, 1/9/20) and the Court's Order on the instant Motion.

### d.   Award of Attorney's Fees

Lastly, the plaintiff asks that the Court award it attorneys' fees for having to enforce the Permanent Injunction (DE# 89, 1/9/20). See Motion at 8. The plaintiff argues that "Defendant's deliberate non-compliance with the Permanent Injunction forced Carnival to proceed with this motion, and a sanction of attorney's fees and costs associated with the motion is appropriate under these circumstances." Id. at 9.

At the time of the filing of the instant Motion on March 10, 2020, the defendant had not completed any specific acts required by the Permanent Injunction (DE# 89, 1/9/20). The record reflects that the defendant did not begin taking steps in earnest to comply with the requirements of the Permanent Injunction (DE# 89) until the plaintiff filed the instant Motion. Therefore, the undersigned believes that the instant Motion was necessary in bringing about the defendant's partial compliance with the Permanent Injunction (DE# 89) and the plaintiff should be awarded reasonable attorney's fees associated with the instant Motion, the Reply and the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Leave to File Supplemental Declaration in Response (DE# 114, 5/20/20).

## 5.   Judgment Debtor Fact Information

In its Motion, the plaintiff asks the Court "to compel McCall to complete the judgment fact information sheet and produce documents as required by

Fla.R.Civ.P.1.560 and 1.977" within thirty (30) days. Motion at 1, 10.  The defendant

states in her declaration that "[c]ontemporaneously with the filing of my Response, I am

serving Plaintiff with a fact sheet that has been complied with to the best of my

knowledge, belief and current ability." Declaration of Jill "Tammy" McCall (DE# 104-1 at

¶44, 5/11/20).

The plaintiff does not address the Judgment Debtor Fact Information in its Reply.

Therefore, the undersigned concludes that the plaintiff is satisfied with the fact sheet

produced by the defendant and will not further address this request.

## RECOMMENDATION

In accordance with the foregoing, the undersigned respectfully RECOMMENDS

that the Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and

to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20)

be **GRANTED in part and DENIED in part** as follows:

1.      The defendant should be required to produce to the plaintiff a report of all

sales of shore excursions and tours utilizing the Amber Cove name from January 29,

2020 including when, to whom and how many were sold along with supporting invoices

and receipts within thirty (30) days of the issuance of the Court's Order on the instant

Motion.

2.      The Court should provide the defendant thirty (30) days to file a sworn,

written report in accordance with paragraph 3 of the Permanent Injunction (DE# 89,

1/9/20). The sworn, written report should affirm that the defendant has complied with all

of the requirements of paragraph 2 of the Permanent Injunction (DE# 89, 1/9/20) and

clearly indicate that the defendant has surrendered or destroyed all marketing,

advertising or promotional materials in **electronic form** as required by paragraph 2(a); completed the transfer of the domain names as required by paragraph 2(b); cancelled or removed all of the online accounts or pages bearing the Accused Mark as required by paragraph 2(c) and sent letters to U.S. customers as required by paragraph 2(g). If, after the thirty (30) days, the defendant fails to: (1) file the sworn written report in accordance with paragraph 3 of the Permanent Injunction; (2) meet any of the requirements of the Permanent Injunction (DE# 89, 1/9/20) or (3) provide to the plaintiff a report of all sales of shore excursions and tours with supporting invoices and receipts as required in paragraph 1 of this Report and Recommendation, the Court should impose a $200.00 daily fine on the defendant until the defendant has fully complied with the Permanent Injunction (DE# 89, 1/9/20) and the Court's Order on the instant Motion.

3.     The Court should provide the plaintiff with twenty (20) days to file documents supporting reasonable attorney's fees incurred in connection with the instant enforcement proceedings.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794

(1989); 11th Cir. R. 3-1 (2016).

     RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida

this **25th** day of August, 2020.

                    _____
                    JOHN J. O'SULLIVAN
                    CHIEF UNITED STATES MAGISTRATE JUDGE