UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-24588-CIV-UNGARO/O'SULLIVAN

CARNIVAL CORPORATION,

      Plaintiff,

v.

TAMMY MCCALL d/b/a
AMBER COVE ADVENTURES,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 113, 5/20/20). This motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. See Order (DE# 115, 6/1/20). Having reviewed the applicable filings and the law, the undersigned respectfully RECOMMENDS that the Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 113, 5/20/20) be **GRANTED** for the reasons stated herein.

## BACKGROUND

On May 20, 2020, the plaintiff filed the instant motion. See Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 113, 5/20/20) (hereinafter "Motion"). The defendant filed her response on June 11, 2020. See Defendant's Response to Plaintiff's Motion for Attorneys' Fees (DE# 116, 6/11/20) (hereinafter "Response"). The plaintiff filed its reply on June 11, 2020. See Reply Brief

in Support of Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 117, 6/11/20) (hereinafter "Reply").

This matter is ripe for adjudication.

## PROCEDURAL HISTORY

On November 1, 2018, the plaintiff filed a complaint alleging the following causes of action: (1) federal unfair competition and false designation of origin, (2) federal cybersquatting, (3) Florida trademark infringement and (4) common law trademark infringement and unfair competition. See Complaint for Trademark Infringement, Unfair Competition and Related Claims (DE# 1, 11/1/18) (hereinafter "Complaint"). The defendant did not timely respond to the Complaint.

On December 7, 2018, the Court entered an Order directing the Clerk of the Court to enter a default against the defendant. See Order (DE# 7, 12/7/18). On the same day the Clerk entered a Clerk's Default (DE# 8, 12/7/18).

On December 12, 2018, the defendant's counsel entered an appearance and the plaintiff moved for the entry of a default judgment and permanent injunction. See Notice of Entry of Appearance (DE# 9, 12/12/18); Plaintiff's Motion for Entry of Final Judgment and Permanent Injunction by Default Against Defendant (DE# 10, 12/12/18). The next day, the defendant filed her answer and a response in opposition to the motion for default judgment. See Answer and Affirmative Defenses (DE# 11, 12/13/18) (hereinafter "Answer"); Defendant's Response in Opposition to Plaintiff's Motion for a Default Judgment and Cross-Motion to Vacate Default (DE# 12, 12/13/18). The defendant's response to the motion for default judgment also asked the Court to vacate the Clerk's Default (DE# 8, 12/7/18).

2

Initially, the Court struck the defendant's "answer . . . because it predated the motion to set aside." Order (DE# 15, 12/14/18). Nonetheless, on December 14, 2018, the Court "set aside the default and deemed the answer effective." Id.

Paragraph 6 of the Complaint alleged that "[o]n information and belief, McCall is a Florida domicile, having her principal place of business at 4300 Biscayne Blvd., Suite 203, Miami, Florida 33137. McCall is the owner of Fictitious Name Registration No. G15000066270 for AMBER COVE ADVENTURES." Complaint at ¶6. In her Answer, the defendant admitted the allegations in paragraph 6. See Answer at ¶6. Thus, the defendant admitted that she was domiciled in Florida.

On December 27, 2018, the defendant amended her answer and affirmative defenses. See Amended Answer and Affirmative Defenses (DE# 21, 12/27/18) (hereinafter "Amended Answer").[1] In response to paragraph 6, the defendant stated: "Denied, except admitted that McCall has an address for the conduct of business at the location alleged." Id. at ¶6.

On December 28, 2018, the Court issued its Scheduling Order for Pretrial Conference and Trial (DE# 22, 12/28/18) (hereinafter "Scheduling Order"). Pursuant to the Scheduling Order, the deadline to amend the pleadings was January 25, 2019. Id.

On January 7, 2019, the defendant sought leave to file a second amended answer "to correct the erroneous admission that she is a Florida domiciliary, having a principal place of business at 4300 Biscayne Blvd., Suite 203, Miami, Florida 33137"

---

[1] The defendant was permitted to amend her answer "once as a matter of course" within the 21-day period after service of her initial Answer. See Fed. R. Civ. P. 15(a). The plaintiff states that the reason the defendant amended her answer was because the plaintiff "advised [the defendant] that her bare-bone affirmative defenses were deficient." Motion at 3.

and "to assert an additional affirmative defense for improper venue." <u>See</u> Motion and Incorporated Memorandum of Law in Support of Defendant's Motion for Leave to File Second Amended Answer (DE# 24 at 1-2, 1/7/19). The defendant noted that she was seeking leave before the January 25, 2019 deadline to amend the pleadings. <u>Id.</u> at 2.

The plaintiff opposed the relief requested on the ground that the defendant's "proposed amendment would be futile, as [the defendant] has already waived the defense of, <u>inter alia</u>, improper venue." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Leave to File Second Amended Answer (DE# 25 at 1, 1/7/19).

On January 8, 2019, the Court denied the defendant's request for leave to file a second amended answer. <u>See</u> Order (DE# 26, 1/8/19). The Court noted that the defendant had admitted in her answer and in her amended answer "that her place of domicile was Florida." <u>Id.</u> at 2. The Court thus reasoned that:

> Surely [the defendant] knows where she lives, and accordingly there is no good cause for permitting her now, on her third attempt, to amend that response. Additionally, nothing prevented [the defendant] from timely raising the defense of improper venue in her two previous answers. Yet she failed to do so and so has waived the defense.

<u>Id.</u>

On January 10, 2019, the defendant moved for reconsideration of the Court's Order denying the motion for leave to file the second amended answer, to dismiss the Complaint or, in the alternative, for a judgment on the pleadings. <u>See</u> Defendant's Motion and Incorporated Memorandum of Law in Support of Defendant's Motion for Reconsideration, to Dismiss or, in the Alternative, for Judgement on the Pleadings (DE# 28, 1/10/19) (hereinafter "Motion for Reconsideration"). The defendant argued that the Court had committed error in denying the defendant's request for leave to amend the Amended Answer because "the Court appear[ed] to have ignored the 'good cause'

Defendant proffered in support of her proposed amendments, disregarding the circumstances outlined in the declaration of [the defendant's counsel] filed contemporaneously with the motion." Id. at 6. The defendant moved to dismiss the Complaint or, in the alternative, for judgment on the pleadings based on the Court's alleged lack of general and personal jurisdiction over the defendant, improper venue and improper service of process. Id. at 8-18. The defendant also filed a motion seeking to temporarily stay discovery while her motion to dismiss was pending. See Motion and Incorporated Memorandum of Law in Support of Defendant's Motion to Stay Discovery (DE# 27, 1/10/19). On January 11, 2019, the Court denied both motions. See Order (DE# 31, 1/11/19).

On March 8, 2019, the plaintiff moved for summary judgment as to all claims asserted in the Complaint. See Carnival's Motion for Summary Judgment (DE# 36, 3/8/19) (hereinafter "Motion for Summary Judgment"). The Motion for Summary Judgment was supported, in part, by the defendant's failure to timely respond to a request for admissions. See Declaration of Jaime Vining (DE# 36-2 at ¶6, 3/8/19) (stating that "Defendant failed to timely serve a response to Carnival's First Request for Admissions and, pursuant to Rule 36, Fed.R.Civ.P., the matters are automatically deemed admitted.").[2]

On Friday, March 22, 2019 at approximately 3:45 PM, the day her response was due, the defendant filed a motion for a two-week extension of time to file her response.

---

[2] "Under Rule 36(a)(1)(3), when a party does not serve a timely response to requests for admission, the matters are automatically deemed admitted." Schwartz v. NCL (Bahamas), Ltd., No. 08-23092-CIV, 2009 WL 10666990, at *1 (S.D. Fla. Aug. 17, 2009).

See Consent Motion and Memorandum in Support of Request for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment (DE# 41, 3/22/19).[3] The following business day, Monday, March 25, 2019, the Court granted the plaintiff's Motion for Summary Judgment (DE# 42, 3/25/19). See Order (DE# 42 at 1, 3/25/19).

The Court noted that the defendant's response was due on the day she filed her motion for extension of time and that "[n]ow, three days after the deadline, Defendant ha[d] still not responded to the motion" for summary judgment. Order (DE# 42 at 1, 3/25/19). The Court therefore considered the plaintiff's statement of facts as being uncontested pursuant to Rule 56(e)(2) of the Federal Rules of Civil Procedure. Id.

The Court entered summary judgment on all claims in favor of the plaintiff and against the defendant. See Order (DE# 42, 3/25/19). The Court specifically found that "Plaintiff [was] the exclusive owner of all rights related to the trademark AMBER COVE" and that "Defendant ha[d] infringed upon that trademark by, among other things, registering several domain names that use the trademark, such as ambercoveadventures.com and ambercovetour.com." Id. at 2.

Consistent with this Order, the Court entered a judgment in favor of the plaintiff on all counts. See Judgment (DE# 43, 3/25/19).

The next day, the defendant filed a motion seeking to vacate the Order (DE# 42) and Judgment (DE# 43) and for reconsideration of the Court's denial of the defendant's motion for extension of time. See Motion and Memorandum in Support of Motion to Vacate and to Reconsider (DE# 45, 3/26/19) (hereinafter "Motion to Vacate"). The

---

[3] The defendant states that "Carnival agreed to the extension[ ] because Carnival owed discovery responses to Defendant." Response at 8.

defendant argued that the deadline to respond to the Motion for Summary Judgment "had not expired." Id. at 1. The defendant also argued that she should be afforded additional time to respond to the Motion for Summary Judgment because the plaintiff's responses to some of the defendant's discovery remained outstanding. Id. at 2.

On March 29, 2019, the Court denied the defendant's Motion to Vacate. See Order (DE# 47, 3/29/19). The Court noted that the filing of the motion for extension of time did not toll the deadline to file a response to the Motion for Summary Judgment. Id. at 3. The Court further noted that the defendant had failed to cite the outstanding discovery in her motion for extension of time and was, therefore, precluded from making this argument for the first time on a motion for reconsideration. Id. at 3 (stating that "[b]ecause Defendant knew about the allegedly incomplete discovery responses but failed to inform the Court, that is not 'new evidence' which could support a motion for reconsideration pursuant to Rule 59(e).").

On April 1, 2019, the defendant appealed the following orders:

(i) Order granting Motion for Summary Judgment entered on March 25, 2019 (Dkt. No. 42), (ii) Judgment in favor of Plaintiff on all counts entered in this action on March 25, 2019 (Dkt. No. 43); (iii) Order denying Motion to Amend Answer entered in this action on January 8, 2019 (Dkt. No. 26); (iv) Order denying Motion to Stay Discovery and denying Motion for Reconsideration and to Dismiss for Lack of Personal Jurisdiction entered in this action on January 11, 2019 (Dkt. No. 31); (v) Order denying Motion to Seal entered in this action on March 11, 2019 (Docket No. 38); (vi) Order denying in part Motion for Reconsideration entered in this action on March 13, 2019 (Dkt. No. 40); and Order denying Motion to Vacate entered in this action on March 28, 2019 (Dkt. No. 47).

Notice of Appeal (DE# 48 at 1, 4/1/19).

On April 8, 2019, the plaintiff moved for the entry of a permanent injunction and for monetary damages. See Plaintiff's Motion for Entry of Permanent Injunction and Monetary Damages Against Defendant (DE# 51, 4/8/19). The Court denied the plaintiff's

motion on the ground that it lacked judgment because the case was pending on appeal. However, the Court stated that "[i]f the Court had jurisdiction or the Eleventh Circuit relinquished jurisdiction, the Court would enter a permanent injunction and an award of monetary damages in Plaintiff's favor and against Defendant." Id. at 1.

On May 10, 2019, the plaintiff appealed the Court's Order denying the plaintiff's request for the entry of a permanent injunction and for monetary damages. See Notice of Appeal (DE# 58, 5/10/19). The plaintiff indicated that its appeal was "conditional upon disposition of Carnival's motion for remand or dismissal of McCall's appeal in Eleventh Circuit . . . ." Id. at 2 n.1.

On July 2, 2019, the Eleventh Circuit issued an Order of Limited Remand (DE# 66, 7/2/19). The case was remanded to allow this Court to "consider and resolve Carnival's motion for monetary damages and permanent injunction, as indicated by the district court's April 10, 2019 order." Id. at 2.

The Court referred the Plaintiff's Motion for Entry of Permanent Injunction and Monetary Damages Against Defendant (DE# 51, 4/8/19) to the undersigned. On January 9, 2020, the Court adopted the undersigned's Report and Recommendation and granted in part and denied in part the Plaintiff's Motion for Entry of Permanent Injunction and Monetary Damages Against Defendant (DE# 51, 4/8/19). See Order (DE# 88, 1/9/20). On the same day, the Court entered an Order of Permanent Injunction and Monetary Damages (DE# 89, 1/9/20) (hereinafter "Permanent Injunction").

The Permanent Injunction enjoined the defendant from directly or indirectly using the AMBER COVE trademark and required the defendant to take certain actions by January 29, 2020 and February 10, 2020. See Permanent Injunction at ¶¶ 2-3. On

March 10, 2020, the plaintiff filed a motion for contempt based on the defendant's non-compliance with paragraphs 2 and 3 of the Permanent Injunction. See Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20) (hereinafter "Motion for Contempt"). On August 25, 2020, the undersigned issued a Report and Recommendation (DE# 118) on the plaintiff's Motion for Contempt and the matter remains pending before the District Court.

In the interim, on April 10, 2020, the Eleventh Circuit dismissed the defendant's appeal for lack of jurisdiction. See Order of Dismissal (DE# 103, 4/10/20). The Eleventh Circuit noted that "[a]t the time that Ms. McCall originally filed her notice of appeal, the case was not final, as the relief requested in Carnival's complaint had not yet been addressed, and she did not file a new or amended notice of appeal after the case became final." Id. at 3.

On May 20, 2020, the plaintiff filed the instant Motion.

## ANALYSIS

The plaintiff seeks an Order from this Court finding that the plaintiff is entitled to attorney's fees and non-taxable costs under the Lanham Act and the Court's inherent power. Motion at 1.

### 1.    Untimely Response

The plaintiff argues that the instant Motion should be granted by default because the defendant failed to file a timely response. See Reply at 2 (noting that the plaintiff's response was filed a week late). On April 8, 2020, the undersigned entered an Order which allowed the defendant to file her response to the instant Motion no later than June

4, 2020. <u>See</u> Order on Motion and Incorporated Memorandum for Extension of Time (DE# 101 at 1, 4/8/20). The defendant filed her response a week later on June 11, 2020. The defendant did not provide an explanation for the late response.

Local Rule 7.1(c) permits the Court to grant certain motions by default where the nonmovant fails to file a timely response. S.D. Fla. L.R. 7.1(c). "[L]ocal rules generally reflect the courts' traditional authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." <u>Reese v. Herbert</u>, 527 F.3d 1253, 1267-68 (11th Cir. 2008) (citation and internal quotation marks omitted). "[C]ourts have broad discretion to overlook noncompliance with Local Rules." <u>Warner v. CBRE Inc.</u>, No. 13-CV-80055, 2013 WL 12084300, at *2 (S.D. Fla. June 27, 2013). Although the failure to file a timely response is sufficient grounds for granting the instant Motion by default, the undersigned RECOMMENDS that the Court exercise its discretion and address the arguments raised by the parties.

**2.      The Lanham Act**

Under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

**a.      Prevailing Party**

The Eleventh Circuit has stated that "[t]he prevailing party is 'the party succeeding on a significant litigated issue that achieves some of the benefits sought by that party in initiating the suit.'" <u>Montgomery</u>, 168 F.3d at 1304 (quoting <u>Cable/Home Commc'n Corp. v. Network Prods., Inc.</u>, 902 F.2d 829, 853 (11th Cir.1990)). Here, the plaintiff obtained a judgment in its favor on all counts alleged in the Complaint, the entry of a Permanent Injunction prohibiting the defendant from directly or indirectly using the

AMBER COVE trademark and an award of statutory damages. <u>See</u> Judgment (DE# 43, 3/25/19); Order of Permanent Injunction and Monetary Damages (DE# 89, 1/9/20). The plaintiff is therefore the prevailing party in the instant case.

**b.   Exceptional Cases**

The Court must next consider whether this is an exceptional case warranting a fee award.

Under prior precedent, the Eleventh Circuit required evidence of fraud or bad faith for an award of attorney's fees in exceptional cases under the Lanham Act. <u>See, e.g.</u>, <u>Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.</u>, 253 F.3d 1332,1335 (11th Cir. 2001) (stating that an "'exceptional case' is one that can be characterized as 'malicious, fraudulent, deliberate, and willful,' . . . or one in which 'evidence of fraud or bad faith exists.'"); <u>Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.</u>, 675 F.2d 1160, 1169 (11th Cir. 1982) (stating that an award of fees "should be made only in exceptional circumstances and on evidence of fraud or bad faith.").

However, in 2014, the Supreme Court decided <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545 (2014), a patent infringement case. In that case, the Supreme Court held that under section 285 of the Patent Act:

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

<u>Id.</u> at 554 (emphasis added).

Following the <u>Octane Fitness</u> decision, the Eleventh Circuit decided <u>Tobinick v. Novella</u>, 884 F.3d 1110 (11th Cir. 2018). In <u>Tobinick</u>, the Eleventh Circuit

held, as a matter of first impression, that the same "exceptional case" standard articulated in Octane Fitness for awarding attorney's fees under the Patent Act applied to cases brought under the Lanham Act. Id. at 1113. The Eleventh Circuit reasoned that:

> In light of the broad language of Octane Fitness and the unanimous voice of other circuits to have considered this question, we recognize our past precedent as having been abrogated. We conclude that **to be an "exceptional case" under the Lanham Act requires only that a case "stands out from others," either based on the strength of the litigating positions or the manner in which the case was litigated.**

Id. at 1118 (emphasis added) (citing Octane Fitness, 134 S. Ct. at 1756). The Eleventh Circuit noted, however, that "[a] case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." Id. at 1119.

"[T]he Lanham Act requires only that a case 'stands out from others,' either based on the strength of the litigating positions or the manner in which the case was litigated." Tobinick, 884 F.3d at 1118. Thus, the party seeking attorney's fees under the Lanham Act need only show one of these prongs.

In the instant case, the plaintiff argues that "this case is 'exceptional' . . . with respect to both the weakness of Defendant's litigating position and the unreasonable manner in which the case was litigated by Defendant." Motion at 2.[4] The defendant

---

[4] The plaintiff also argues that "[t]he exceptional nature of this case has already been established by virtue of the entry of judgment finding the Defendant engaged in acts of trademark infringement and awarding statutory damages." Motion at 2. However, if that were the case, then attorney's fees would be awarded in every instance where a party prevailed on a Lanham Act claim. See, e.g., Canas v. Flash Dancers, Inc., No. 3:16-CV-393-J-32JRK, 2020 WL 588290, at *7 (M.D. Fla. Feb. 6, 2020) (stating that "[w]hile the Court has determined that the Lanham Act claims were sufficient to support the jury's verdict in Plaintiffs' favor, this does not equate to the case being 'exceptional'").

maintains that she was precluded from arguing the merits of this case and should not be further penalized through the imposition of attorney's fees. Response at 11.

The undersigned will address these arguments below.

### i.    Substantive Strength of Party's Litigating Position

"There is no precise rule or formula for determining whether a Lanham Act case is 'exceptional' based on its lack of substantive strength. Instead,  . . . courts must use their discretion in considering the totality of the circumstances." FCOA, LLC v. Foremost Title & Escrow Servs., LLC, No. 17-23971-CIV, 2019 WL 7790856, at *3 (S.D. Fla. Oct. 17, 2019) (report and recommendation), adp't in Dkt. 175 (order denying attorneys' fees).

The plaintiff argues that the defendant's weak substantive position warrants a finding that the instant case is exceptional. Specifically, the plaintiff notes that the defendant adopted the name "Amber Cove Adventures" with knowledge of the plaintiff's superior rights. Motion at 8. After the plaintiff announced it was opening a new cruise center under the name "Amber Cove," the defendant registered the domain name ambercoveshoreexcursions.com on December 13, 2014 and the domain name ambercoveadventures.com on March 30, 2015 and began doing business under the names "Amber Cove Adventures" and "Amber Cove Shore Excursions." Id. The defendant also registered two additional domain names[5] and opposed the plaintiff's U.S. trademark application to register the name "Amber Cove" after the plaintiff "plac[ed

---

[5] The defendant registered the domain name ambercoveatv.com on December 3, 2018 and the domain name ambercovetour.com on February 9, 2018. See Exhibit 3 (DE# 36-2 at 57, 63, 3/8/19).

the defendant] on notice of its concerns." <u>Id.</u> at 9. The defendant made certain assertions in her opposition to the plaintiff's federal trademark application which were inconsistent with her position in the instant case. <u>Id.</u> at 9-10.[6] Lastly, after the Court entered a Permanent Injunction (DE# 89) against the defendant on January 9, 2020, the defendant's website ambercoveadventures.com was still operational in March 2020.[7] <u>Id.</u> at 10.

The defendant argues that she has "consistently been barred from presenting" the merits of this case and that "there is nothing exceptional about this case where Defendant was defaulted on a summary judgment motion despite the pendency of an unopposed motion to enlarge the time to respond, filed prior to the deadline, and before virtually any discovery had taken place." Response at 5, 7-8.

The undersigned rejects the defendant's characterization of the summary judgment being entered by default. Because the defendant did not file a timely response to the Motion for Summary Judgment, the District Court "consider[ed] Plaintiff's statement of facts uncontested." Order (DE# 42 at 1, 3/25/19). The uncontested facts established that the "Plaintiff [was] the exclusive owner of all rights related to the trademark AMBER COVE" and that the "Defendant ha[d] infringed upon that trademark

---

[6] The defendant asserted that (1) the name "Amber Cove Adventures" was inherently distinctive and deserving of trademark protection; (2) the names "Amber Cove" and "Amber Cove Adventures" were very similar in appearance . . . and very similar in sound;" (3) the applied-for-services were legally identical; (4) confusion between the two names was inevitable and (5) buyers would likely think the goods came from the same source or were affiliated. Declaration of Jaime Vining (DE# 36-2 at ¶8, 3/8/19).

[7] The defendant's failure to timely remove the ambercoveadventures.com website is addressed in the undersigned's Report and Recommendation (DE# 118 at 8, 8/25/20) on the plaintiff's Motion for Contempt (DE# 94, 3/10/20).

by, among other things, registering several domain names that use the trademark, such as ambercoveadventures.com and ambercovetour.com." Id. at 2.

In Watts v. Club Madonna, Inc., the Eleventh Circuit affirmed this Court's order granting summary judgment following a defendant's failure to file a timely response. 784 F. App'x 684, 687 (11th Cir. 2019). In Watts, the defendant "waited until after the close of business on the day its summary judgment response was due to ask for an extension. Counsel thus left to chance whether the district court would deny . . . [the] request for an extension, leaving it no time to finalize its summary judgment response." Id. at 688 (quotation marks omitted).

Similarly here, the defendant moved for an extension of time on the day her response to the Motion for Summary Judgment was due and thus, "left to chance whether the district court would deny . . . [the] request for an extension, leaving [the defendant] no time to finalize [her] summary judgment response." Watts, 784 F. App'x at 688.

Turning to the strength of the defendant's litigation position, the undersigned finds that the defendant's position in the instant case was remarkably weak. In her opposition to the plaintiff's federal trademark application, the defendant affirmed many of the factors which supported a likelihood of confusion between the two marks.[8] The

---

[8] In evaluating whether there is a likelihood of confusion between two marks, the Eleventh Circuit considers the following seven factors: (1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public. Welding Servs. v. Forman, 509 F.3d 1351, 1360 (11th Cir. 2007).

defendant admitted that: (1) the name "Amber Cove Adventures" was inherently distinctive and deserving of trademark protection; (2) the names "Amber Cove" and "Amber Cove Adventures" were very similar in appearance . . .  and very similar in sound;" (3) the applied-for-services were legally identical; (4) confusion between the two names was inevitable and (5) buyers would likely think the goods came from the same source or were affiliated. Declaration of Jaime Vining (DE# 36-2 at ¶8, 3/8/19).

The defendant challenges the strength of the plaintiff's case by asserting that the Amber Cove trademark is "arguably a geographical descriptor under U.S. trademark law" and that the defendant "owns a registered trademark for AMBER COVE in the Dominican Republic" where she lives. Response at 5, 10. However, the defendant has not presented any evidentiary support for the term "Amber Cove" being a geographical descriptor (a position which is inconsistent with her opposition to the plaintiff's federal trademark application and her own U.S. federal trademark application for the name AMBER COVE ADVENTURES) or presented any authority concerning the legal relevance of her foreign trademark.

The defendant also challenges the date the plaintiff first used the mark. According to the defendant, the plaintiff "alleges that it has operated a website with the domain name ambercove.com since 2011, but only claims October of 2015 a[s] the date of first use of its alleged mark" whereas the "Defendant registered the domain names ambercoveadventures.com and ambercoveshoreexcursions.com in December 2014 and March of 2015, respectively." Response at 5.[9] The undersigned notes that the

---

[9] The defendant transposes the registration dates. The defendant registered the domain name ambercoveshoreexcursions.com on December 13, 2014 and the domain name ambercoveadventures.com on March 30, 2015. Exhibit 3 (DE# 36-2 at 54, 60, 3/8/19).

plaintiff "announced that it was launching a new cruise center under the name AMBER

COVE" in or about 2012, Declaration of Jeffrey Gottlieb (DE# 31-1 at ¶5, 3/8/19), which

pre-dates all of the defendant's domain name registrations.

In determining whether a case is exceptional, "courts may consider whether there

was purposeful, intentional or willful conduct that went beyond mere negligence."

Sream, Inc. v. Cary Tobacco I, Inc., No. 16-23963-CIV, 2017 WL 6408981, at *1 (S.D.

Fla. Aug. 2, 2017), report and recommendation adopted, No. 16-CV-23963, 2017 WL

6408996 (S.D. Fla. Aug. 17, 2017).

A case may be exceptional where the infringement was willful. See CBRE, Inc. v.

Capital Commercial Real Estate Grp., Inc., No. 19-61235-CIV, 2019 WL 7708503, at *1

(S.D. Fla. Oct. 10, 2019), report and recommendation adopted, No. 19-CIV-61235-RAR,

2019 WL 7708499 (S.D. Fla. Oct. 28, 2019) (finding case was exceptional where

defendant had "redesigned its logos with intent to derive a benefit from the plaintiff's

business reputation."). In Sream, Inc. v. Onive Food Inc., this Court found that under the

standard set-forth in Tobinick, the "[p]laintiffs' well-pleaded allegations that Defendant's

infringement was willful [was] more than enough to warrant attorneys' fees . . . ." No. 18-

80491-CV, 2018 WL 8345099, at *3 (S.D. Fla. Sept. 27, 2018) (awarding attorney's fees

under the Lanham Act upon entry of a final default judgment).

However, the mere entry of a default judgment on a complaint that alleges

willfulness is not always sufficient to support an award of attorney's fees. In BMW of N.

Am., LLC v. Eurocar Tech., L.L.C., "the Court conclude[d] that making a conscious

choice to default is not enough to take this case out of the run-of-the-mill category." No.

613CV1215ORL18DAB, 2014 WL 10748119, at *4 (M.D. Fla. July 15, 2014), report and

recommendation adopted, No. 613CV1215ORL18DAB, 2014 WL 10742620 (M.D. Fla. Aug. 5, 2014). In <u>BMW</u>, the Court looked at the defendant's infringing conduct and noted that "[u]nlike the <u>PetMed</u> defendants,[10] the instant Defendants **did not willfully seek to register and thus appropriate a domain name**; rather, they wrongfully included Plaintiff's logo among many other logos in business flags and print and website advertising." <u>Id.</u> (emphasis added).

Here, the defendant did willfully register domain names which used the plaintiff's trademark. In its Order granting summary judgment, the Court specifically found that the "Plaintiff [was] the exclusive owner of all rights related to the trademark AMBER COVE" and that "Defendant ha[d] infringed upon that trademark by, among other things, registering several domain names that use the trademark, such as ambercoveadventures.com and ambercovetour.com." <u>See</u> Order (DE# 42 at 2, 3/25/19). In a separate Order, the Court found that the defendant's actions were willful:

> Defendant shall pay Plaintiff the sum of $40,000.00 as an award of statutory damages for **Defendant's willful acts of cybersquatting**. Said award to Plaintiff shall bear interest from the date of this judgment at the rate provided by law. Because the Court finds that **Defendant's acts constitute willful and/or malicious injury to Plaintiff and/or Plaintiff's property** under 11 U.S.C. § 523(a)(6), the sum awarded to Plaintiff herein is not dischargeable in any bankruptcy proceeding filed by Defendant.

Preliminary Injunction (DE# 89 at 4, 1/9/20) (emphasis added).

The Court should find that the instant case is exceptional based on the defendant's weak litigation position and her willful infringement of the plaintiff's trademark.

---

[10] <u>PetMed Express, Inc. v. MedPets.Com, Inc.</u>, 336 F.Supp.2d 1213, 1222 (S.D.Fla.2004) (finding case was exceptional under old standard).

### ii.    Unreasonable Manner in Which the Case was Litigated

A case may also be exceptional if it is litigated in an unreasonable manner.

Octane Fitness, 572 U.S. at 554.

The plaintiff argues that the instant case is exceptional based on the

unreasonable manner in which the defendant litigated this case. The plaintiff notes that

the defendant repeatedly missed court deadlines and discovery deadlines and sought to

relitigate issues previously decided by the Court. Motion at 11, 13 (stating that

"Defendant's cavalier attitude towards the litigation, her lack of diligence in meeting

deadlines, and violations of various Rules and Orders serve as yet further bases to find

this case to be exceptional."). The plaintiff also cites the defendant's refusal to cease

her infringing activities in response to pre-suit correspondence,[11] the affirmative steps

the defendant took to register the mark "AMBER COVE ADVENTURES" with the U.S.

Patent and Trademark Office and the defendant's inconsistent positions.[12] Reply at 6-7.

---

[11] The Complaint alleges that:

> On or about July 13, 2018, and again on July 26, 2018, Carnival, through counsel, conveyed to McCall a letter informing McCall of Carnival's rights in and to the AMBER COVE trademark, and of Carnival's substantial investment and goodwill in the mark, requesting that McCall immediately cease and desist use of the name AMBER COVE ADVENTURES (and AMBER COVE SHORE EXCURSIONS). McCall has not complied with any request made in the correspondence.

Complaint at ¶24. The defendant denied the allegations in this paragraph, "except . . . that on the dates stated, Carnival, through counsel, sent letters to defendant." Amended Answer at ¶24.

[12] The plaintiff notes that the defendant "opposed the federal registration of Carnival's AMBER COVE mark with the Trademark Trial and Appeal Board (TTAB) of the [U.S. Patent and Trademark Office]" and took positions in that proceeding which were inconsistent with her defenses in the instant case. Reply at 7 (noting that in her Amended Answer, the defendant denied likelihood of consumer confusion and asserted that the Amber Cove mark was primarily geographically descriptive).

The defendant argues that the Court essentially entered a default judgment when it granted the plaintiff's Motion for Summary Judgment without providing the defendant with an extension of time to file her response in opposition. Response at 9. The defendant also takes issue with the Court's denial of her motion for leave to file a second amended answer: Id. at 10 ("No possible prejudice could have been contemplated by these facts, and the Court's refusal nonetheless to deny the amendment motion would be an entirely improper basis for in any way supporting a finding that this case is 'exceptional.'").

The Supreme Court has stated that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so "exceptional" as to justify an award of fees." Octane Fitness, 572 U.S. at 555. Along that vein, "[c]ourts have generally recognized, . . . that while the bar a prevailing party must clear to establish an 'exceptional' case has been lowered, an award of fees involves litigation conduct that goes beyond mere stonewalling, excessive discovery demands, or otherwise burdensome litigation strategies." Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc., No. 13-21604-CIV, 2017 WL 3610583, at *4 (S.D. Fla. Aug. 11, 2017), report and recommendation adopted, No. 13-CV-21604, 2018 WL 4409885 (S.D. Fla. June 25, 2018).

In the instant case, the Court should not find that the case is exceptional based on the defendant's litigation conduct.

The defendant, not the plaintiff, bore the consequences of her actions and inactions. The defendant filed her Answer (DE# 11, 12/13/18) and her Amended Answer (DE# 21, 12/27/18) without challenging personal jurisdiction and venue. As a result, the

defendant waived those challenges and was not permitted to assert them. See Order (DE# 26, 1/8/19); Order (DE# 31, 1/11/19). Similarly, the defendant failed to timely respond to request for admissions. As a result, the plaintiff filed a Motion for Summary Judgment which was supported in large part by the unanswered request for admissions. See Declaration of Jaime Vining (DE# 36-2 at ¶¶6, 7, 3/8/19). The defendant waited until the day her response to the Motion for Summary Judgment was due to seek a two-week extension of time. As a result, the following business day, the Court granted the Motion for Summary Judgment in its entirety.

This is not a case where the defendant unnecessarily delayed the proceedings.[13] Rather than delay the proceedings, the defendant's failure to respond to the request for admissions (coupled with her failure to respond to the summary judgment motion) streamlined the proceedings in that it allowed the plaintiff to successfully move for summary judgment based, in substantial part, on the unanswered request for admissions.

To the extent the plaintiff complains about "repeatedly missed . . . discovery deadlines," Motion at 11, the undersigned notes that the plaintiff did not seek to compel the defendant's discovery responses or otherwise avail itself of the Court's discovery procedures. In FCOA, the court found that even if the plaintiff had excessive depositions and ignored Defendant's discovery requests, this conduct did "not give rise to a finding that Plaintiff litigated [the] case in an unreasonable manner because Defendant had the

---

[13] See, e.g., Tobinick, 884 F.3d at 1119 (affirming district court's finding that case was exceptional, in part, because the losing party "responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly [sought] to add parties and claims and [brought] what the [district] court viewed as baseless motions for sanctions and accusations of perjury.").

opportunity to seek relief under the Federal and Local Rules" and "[i]f this was the standard to find a case 'exceptional,' almost every case would fit this category." 2019 WL 7790856, at *5; see also Alexsam, Inc. v. WildCard Sys., Inc., No. 15-CV-61736, 2019 WL 2245420, at *13 (S.D. Fla. Feb. 13, 2019), report and recommendation adopted, No. 15-CV-61736, 2019 WL 1010241 (S.D. Fla. Mar. 4, 2019) (patent case) (noting that "even if Plaintiff failed to produce discovery expeditiously, which may have led Defendants to file two motions to compel, that [was] not evidence of egregious conduct justifying a fee award.").

The defendant filed two motions for reconsideration. See Motion for Reconsideration (DE# 28, 1/10/19); Motion to Vacate (DE# 45, 3/26/19). Although the defendant lost both motions, the manner in which she litigated the case was not exceptional. Both motions were quickly disposed of by the Court. See Order (DE# 31, 1/11/19); Order (DE# 47, 3/29/19).

This case is not exceptional merely because the defendant's motions compelled the plaintiff to file opposing memoranda. The filing of a response in opposition is entirely consistent with the adversarial nature of these proceedings. See FCOA, 2019 WL 7790856, at *5 ("Defendant presents a laundry list of complaints as to how Plaintiff opposed Defendant at every turn, but that is the nature of litigation."). "A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." Tobinick v. Novella, 884 F.3d 1110, 1119 (11th Cir. 2018).

Lastly, to the extent the plaintiff notes that the defendant's infringing conduct continued after the entry of the Permanent Injunction (DE# 89, 1/9/20), those actions

may be redressed through the filing of the plaintiff's Motion for Contempt (DE# 94, 3/10/20). "[T]he remedy for violation of the prior injunction is a motion for contempt, not an award of attorney's fees under this provision." RCI TM Corp. v. R & R Venture Grp., LLC, No. 6:13-CV-945-ORL-22, 2015 WL 668715, at *11 (M.D. Fla. Feb. 17, 2015) (declining to find case was exceptional).

Considering the totality of the circumstances, the undersigned cannot conclude that the defendant's litigation tactics harmed the plaintiff or delayed the proceedings. The plaintiff filed its Complaint (DE# 1) on November 1, 2018 and expeditiously obtained a Judgment (DE# 43) in its favor on all counts less than five months later, on March 25, 2019.

The Court should not find that the instant case is exceptional based on the manner in which the defendant litigated the case.

### 3.    The Court's Inherent Authority

The plaintiff also seeks attorney's fees under the Court's inherent authority. Motion at 1. However, the plaintiff does not provide any argument or citation to legal authority to support its invocation of the Court's inherent authority. Because the plaintiff has not briefed the issue, the Court should not consider whether the plaintiff would be entitled to fees under the Court's inherent authority. In re Health Ins. Innovations Sec. Litig., No. 8:17-CV-2186-T-17SPF, 2019 WL 3940842, at *34 (M.D. Fla. June 28, 2019) (stating that the Court would not analyze arguments that were not briefed).

## CONCLUSION

In sum, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the

governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>Octane Fitness</u>, 572 U.S. at 554. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." <u>Id.</u> The instant case is exceptional based on the defendant's weak litigation position and the Court's finding of willful infringement. The instant case is not exceptional with respect to the manner in which the defendant litigated the case.

## <u>RECOMMENDATION</u>

Based upon the totality of the circumstances, and the record as a whole, the undersigned concludes that the instant case is exceptional based on the defendant's weak litigation position and the Court's finding of willful infringement, but not exceptional as to the manner in which the defendant litigated the case. Accordingly, the undersigned respectfully RECOMMENDS that the Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 113, 5/20/20) be **GRANTED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Ursula Ungaro, United States District Judge. Failure to file objections timely shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. <u>See</u> 28 U.S.C. § 636(b)(1);

Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **8th** day of September, 2020.

JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE