UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-24588-CIV-UNGARO/O'SULLIVAN

CARNIVAL CORPORATION,

     Plaintiff,

v.

TAMMY MCCALL d/b/a
AMBER COVE ADVENTURES,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on the Plaintiff's Submission of Documents Supporting Its Reasonable Attorneys' Fees Incurred in Connection with Enforcement Proceedings (DE# 123, 9/29/20) and Carnival Corporation's Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 135, 2/2/21). Matters related to attorney's fees were referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation. See Order (DE# 115, 6/1/20). Having reviewed the applicable filings and the law and for the reasons stated herein, the undersigned respectfully RECOMMENDS that the Plaintiff's Submission of Documents Supporting Its Reasonable Attorneys' Fees Incurred in Connection with Enforcement Proceedings (DE# 123, 9/29/20) and Carnival Corporation's Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 135, 2/2/21) be **GRANTED in part and DENIED in part**.

## BACKGROUND

**A.      Attorney's Fees for Enforcing the Permanent Injunction**

On March 10, 2020, the plaintiff filed a verified motion seeking various forms of relief—including attorney's fees—stemming from the defendant's failure to comply with the Order of Permanent Injunction and Monetary Damages (DE# 89, 1/9/20) (hereinafter "Permanent Injunction"). See Plaintiff's Verified Motion to Enforce Injunction, for Contempt, for Sanctions, and to Compel Defendant to Provide Judgment Debtor Fact Information (DE# 94, 3/10/20). The undersigned issued a Report and Recommendation recommending that the plaintiff's motion be granted in part and denied in part. See Report and Recommendation (DE# 118, 8/25/20). The Court ratified, affirmed and adopted this Report and Recommendation and ordered the plaintiff to "file documents supporting reasonable attorneys' fees incurred in connection with the instant enforcement proceedings." Order (DE# 121 at ¶ 4, 9/9/20).

On September 29, 2020, the plaintiff filed a submission seeking **$22,572.00** in attorney's fees related to the plaintiff's enforcement of the Permanent Injunction. See Plaintiff's Submission of Documents Supporting Its Reasonable Attorneys' Fees Incurred in Connection with Enforcement Proceedings (DE# 123, 9/29/20) (hereinafter "Submission"). On October 16, 2020, the defendant filed her response to the Submission. See Defendant's Objections to Magistrate Judge's Report and Recommendation (DE# 127, 10/16/20) (hereinafter "Response to Submission").[1] The plaintiff filed its reply on October 19, 2020. See Plaintiff's Reply Memorandum in

---

[1] This document appears to be miscaptioned.

Support of Its Reasonable Attorneys' Fees Incurred in Connection with Enforcement
Proceeding (DE# 128, 10/19/20) (hereinafter "Reply to Submission").

**B.    Attorney's Fees Incurred in the Litigation**

On May 20, 2020, the plaintiff filed a motion seeking a ruling that the plaintiff was
entitled to attorney's fees and non-taxable costs under the Lanham Act and the Court's
inherent power. See Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees
and Non-Taxable Costs (DE# 113, 5/20/20). On September 8, 2020, the undersigned
issued a Report and Recommendation recommending that the plaintiff be awarded
reasonable attorney's fees under the Lanham Act. See Report and Recommendation
(DE# 120, 9/8/20). The Court ratified, affirmed and adopted this Report and
Recommendation on November 18, 2020. See Order (DE# 129, 11/18/20).

On February 2, 2021, the plaintiff filed Carnival Corporation's Local Rule 7.3
Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 135, 2/2/21)
(hereinafter "Motion")[2] seeking **$282,045.00** in attorney's fees. On February 16, 2021,
the defendant filed her response to the Motion. See Defendant's Response to Carnival
Corporation's Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fee
Award (DE# 136, 2/16/21) (hereinafter "Response"). The plaintiff filed its reply on
February 18, 2021. See Carnival Corporation's Reply Memorandum in Support of Local
Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 137,
2/18/21) (hereinafter "Reply").

---

[2] The Motion contains multiple sets of page numbers. To avoid confusion and for the
sake of consistency, the undersigned will cite to the page numbers automatically
assigned by the Court's CM/ECF system appearing at the top, right-hand side of each
page.

## ANALYSIS

The plaintiff seeks to recover a total of $282,045.00 in attorney's fees. Motion at 2.[3] The undersigned has carefully reviewed the plaintiff's billing records and finds that the fees submitted actually total $280,129.00.[4]

The undersigned will address the reasonableness of the plaintiff's fee request below.

### A.     Entitlement

As noted above, the Court has determined that the plaintiff is entitled to reasonable attorney's fees related to the enforcement of the Permanent Injunction. See Order (DE# 121, 9/9/20). The Court has also determined that the plaintiff is entitled to reasonable attorney's fees under the Lanham Act for prosecuting the instant action. See Order (DE# 129, 11/18/20). Accordingly, the plaintiff has shown entitlement to reasonable attorney's fees incurred during the litigation which includes fees incurred in enforcing the Permanent Injunction.

---

[3] This amount includes $22,572.00 in attorney's fees previously requested as a result of the plaintiff's enforcement of the Permanent Injunction. Motion at 6, n. 1.

[4] The plaintiff submitted a table summarizing the fees billed each month. See Table (DE# 135-2 at 57). There are mathematical errors in the "Fees" column of the plaintiff's chart for the months of April 2019 and March 2020. The plaintiff's chart lists the April 2019 fee total as $3**3**,297.00. Id. However, the correct total is $3**2**,297.00 (40.80 hours at $340.00 per hour plus 33.50 hours at $550.00 per hour). This results in a $1,000.00 error. Similarly, the amount of fees billed for March 2020 total $28,948 on the plaintiff's chart. Id. However, the correct total is $28,032.00 (10.30 hours at $340.00 per hour plus 44.60 hours at $550.00 per hour). This results in a $916.00 error. As such, the total amount requested by the plaintiff ($282,045.00) should be reduced to $280,129.00 to account for this $1,916.00 ($1,000.00 plus $916.00) error.

**B.      Defendant's Non-Compliance with Local Rule 7.3**

Local Rule 7.3 sets forth the requirements for filing a motion for attorney's fees,

non-taxable expenses and costs. "This rule provides a mechanism to assist parties in

resolving attorneys fee and costs disputes by agreement." S.D. Fla. L.R. 7.3(a).

Local Rule 7.3(a) requires that a party opposing the fee request make its

objections with particularity. It states, in part, that:

> Within fourteen (14) days after service of the motion, **the respondent shall describe with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority**. If a party objects to an hourly rate, its counsel must submit an affidavit giving its firm's hourly rates for the matter and include any contingency, partial contingency, or other arrangements that could change the effective hourly rate.

S.D. Fla. L.R. 7.3(a) (emphasis added).

Local Rule 7.3(b) contains a conferral requirement and also requires that the

party opposing the fee request object with particularity:

> **(b) Good Faith Effort to Resolve Issues by Agreement**. Except as to any aspect of a fee claim upon which the parties agree, a draft motion compliant with Local Rule 7.3(a)(1)-(8) must be served but not filed at least thirty (30) days prior to the deadline for filing any motion for attorneys' fees and/or costs that is governed by this Local Rule. Within twenty-one (21) days of service of the draft motion, the parties shall confer and attempt in good faith to agree on entitlement to and the amount of fees and expenses not taxable under 28 U.S.C. § 1920. **The respondent shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority**. If a federal statute provides a deadline of fewer than sixty (60) days for a motion governed by Local Rule 7.3(a), the parties need not comply with this paragraph's requirements.

S.D. Fla. L.R. 7.3(b) (emphasis added).

In its Reply to the Submission, the plaintiff raised the defendant's non-compliance with Local Rule 7.3. <u>See</u> Reply to Submission at 2.[5] The plaintiff argued that the defendant's general objections to the plaintiff's time entries did not comply with Local Rule 7.3(b) and the defendant's noncompliance was grounds for granting the plaintiff's fee request in its entirety:

> As a threshold matter, McCall's Objections violate Local Rule 7.3(b), which requires her to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which [she] objects, . . . as to amount, and . . . provide supporting legal authority." <u>See</u> Local Rule 7.3(b). McCall only generally addresses the time entries at issue and concedes in her filing that her counsel "has been unable to find any decisional authority" to support her Objections. . . .  This failure to comply with the Local Rules provides an independent basis for the Court to overrule McCall's Objections.

<u>Id.</u>

In its reply to the Motion, the plaintiff continues to raise the defendant's non-compliance with the Local Rules. Reply at 1 (stating that "[a]t no point during the parties' pre-filing communications, either over the telephone or via email, did counsel for . . . McCall raise any objections to the amount of fees sought by Carnival, let alone any of the objections addressed in the Opposition.").[6] The plaintiff further notes that the Court's Order setting a briefing schedule also required the defendant to state her objections with particularity. <u>Id.</u> at 1-2; <u>see</u> Order (DE# 131, 12/16/20) (requiring the "parties to confer as to draft Fees Amount Motion, including Defendant's provision of her description in writing and with reasonable particularity of each time entry to which she

---

[5] At the time, the plaintiff's fee request consisted only of the $22,572.00 sought for enforcing the Permanent Injunction.

[6] The plaintiff also raised the defendant's non-compliance with the Local Rules in its Reply to Submission. <u>See</u> Reply to Submission at 2-3. For the reasons stated herein, the Court should consider the merits of the plaintiff's fee request.

objects, with supporting legal authority.").

The plaintiff filed the supplemental declaration of its attorney, David K. Friedland, which further sets forth the defendant's non-compliance with the Local Rule. See Supplemental Declaration of David K. Friedland in Support of Carnival Corporation's Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 137-1, 2/18/21) (hereinafter "Friedland Suppl. Decl."). Mr. Friedland's supplemental declaration states that:

> 3.      [On January 7, 2021, the defendant's counsel received by email] . . . the draft version of Carnival's Fees Amount Motion, as required by Local Rule 7.3 and the Court's Order setting the parties' schedule in connection with the Fees Amount Motion (the "Fees Amount Scheduling Order;" Doc. No. 131).

> 4.      According to the Fees Amount Scheduling Order, Defendant's deadline for "provision of her description in writing and with reasonable particularity of each time entry to which she objects, with supporting legal authority," pursuant to Local Rule 7.3, was January 28, 2021, three weeks after Carnival's service of the draft Fees Amount Motion. (Doc. No. 131).

> 5.      **Defendant did not provide a "description in writing and with reasonable particularity of each time entry to which she objects, with supporting legal authority" to Carnival by the January 28, 2021 deadline, or at any time subsequent thereto, until her filing of her opposition to the Fees Amount Motion on February 16, 2021**.

Friedland Suppl. Decl. at ¶¶ 3-5 (emphasis added).

In the instant case, the defendant objected in a cursory manner to "multiple billing entries submitted by Plaintiff in support of its motion for fees . . . [which] reflect either excessive, vague or block billing of hours expended by Plaintiff's counsel," including approximately 93 time entries which used the words "attention to;" the defendant also "highlight[ed] the more glaring example[s] of Plaintiff's block billing." Response 1-2, 3 n. 5. However, as noted in Mr. Friedland's supplemental declaration, "Defendant did not provide a 'description in writing and with reasonable particularity of each time entry to

which she objects, with supporting legal authority,'" Friedland Suppl. Decl. at ¶ 5, as required by Local Rule 7.3(a)-(b).

Compliance with Local Rule 7.3 is not optional and futility will not excuse a party from complying with its obligations. Norych v. Admiral Ins. Co., No. 08-60330-CIV-ALTONAGA, 2010 WL 2557502, at *2 (S.D. Fla. June 23, 2010) (noting that "Local Rule 7.3 would be undermined if a party did not have to serve a draft motion simply because it believed or understood the motion would be opposed."). In J.B. Hunt Transp., Inc. v. S & D Transp., Inc., for instance, the Eleventh Circuit upheld the district court's denial of motions for attorneys' fees, expenses and costs and stated that "[b]ecause the district court held that [the movant] failed to comply with Local Rule 7.3, which constituted an independently sufficient basis to deny [the movant]'s motions, we affirm." 589 F. App'x 930, 933 (11th Cir. 2014).

However, the Court has discretion in applying the Local Rules. See Maale v. Kirchgessner, No. 08-80131-CIV, 2011 WL 1549058, at *5 (S.D. Fla. Apr. 22, 2011) (stating that "[s]trict compliance with the Local Rules is always preferred and non-compliance may warrant appropriate sanctions; however . . . it is properly within the Court's discretion to determine that the limited non-compliance did not warrant denial of the entire motion for attorney's fees."); see also Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC, No. 12-22539-CIV, 2015 WL 11201164, at *2 (S.D. Fla. Jan. 14, 2015) ("[n]otwithstanding [the nonmovant]'s failure to follow the unequivocal requirements of Local Rule 7.3, the Undersigned will consider the tardy specific objections to particular time entries.").

Here, the defendant failed to meet her obligations under Rule 7.3(a) and (b). At the same time, other than a January 7, 2021 email attaching a draft of the fees motion, there does not appear to be any documented follow-up efforts by the plaintiff counsel to initiate a conferral between the parties.

The plaintiff's Certificate of Service merely states that:

> The undersigned certifies that, pursuant to Local Rule 7.3(b), counsel for Plaintiff attempted to engage counsel for Defendant in good faith efforts to resolve the issues of the amount of Plaintiff's award of attorneys' fees. However, notwithstanding Plaintiff's provision of a draft version of this Motion on January 7, 2021 and the Court's entry of an Order requiring Defendant to provide her description in writing and with reasonable particularity of each time entry to which she objects, with supporting legal authority, by January 28, 2021 (Doc. No. 131), Defendant did not provide any objections as to the amount of a fee award sought in this Motion.

Motion at 14. The Certificate of Service does not provide any specifics about the plaintiff's "attempt[ ] to engage counsel for Defendant in good faith efforts to resolve the issues of the amount of Plaintiff's award of attorneys' fees," other than the January 7, 2021 email wherein the plaintiff provided a draft version of its fee motion. Id. Similarly, Mr. Friedland's supplemental declaration references the January 7, 2021 email, Friedland Suppl. Decl. at ¶ 3,[7] but is otherwise silent as to any follow-up telephone calls, emails or other efforts on the part of the plaintiff's counsel to initiate a conferral.[8]

Based on this record and notwithstanding the defendant's non-compliance with her obligations under Local Rule 7.3, the Court should exercise its discretion and

---

[7] A copy of the January 7, 2021 email is attached to Mr. Friedland's supplemental declaration. See Email (DE# 137-1 at 3, 2/18/21).

[8] It is possible that the plaintiff made other attempts to confer with the defendant about the fee request but did not describe these attempts in its Certificate of Service or in Mr. Friedland's supplemental declaration.

consider the reasonableness of the plaintiff's fee request. "[E]ven in the absence of a response from the Defendants, the Court has a duty to ensure the Plaintiffs' request for attorneys fees is reasonable." Barrera v. Officina, Inc., No. 10-21382-CIV, 2012 WL 692212, at *1 (S.D. Fla. Mar. 2, 2012).

## C.    Fee Amount

Having determined that the plaintiff is entitled to an award of attorney's fees, the Court must next address the appropriate amount of that fee award.

In calculating a reasonable fee award, the Court must consider the number of hours reasonably expended on this litigation, together with the customary fee charged in this community for similar legal services. See Norman v. Hous. Auth. of Cty. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar." The lodestar "embodies a presumptively reasonable fee." Yellow Pages Photos, Inc. v. Ziplocal, LP, 846 F.3d 1159, 1164 (11th Cir. 2017). Nonetheless, the lodestar may be adjusted in order to reach a more appropriate fee award under certain circumstances. Blum v. Stenson, 465 U.S. 886, 888 (1984).

### 1.    Reasonable Hourly Rate

The Court must first evaluate the plaintiff's fee request in terms of the appropriate hourly rate. The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." Blum, 465 U.S. at 895. In determining the prevailing market rates, the Court should consider several factors including: "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the

attorneys' relationship to the client, and awards in similar cases." <u>Mallory v. Harkness</u>, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996), aff'd, 109 F.3d 771 (11th Cir. 1997) (citing <u>Dillard v. City of Elba</u>, 863 F. Supp. 1550, 1552 (M.D. Ala. 1993)).

Generally acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work. <u>Norman</u>, 836 F.2d at 1299. Furthermore, the Court may make a fee award based on its own experience where documentation and testimony are inadequate or the fees claimed seem expanded. <u>Id.</u> at 1303 (citing <u>Davis v. Bd. of Sch. Comm'rs of Mobile Cty.</u>, 526 F.2d 865, 868 (5th Cir. 1976)).

The plaintiff requests the following hourly rates for its timekeepers: $440.00 and $550.00 for attorney David K. Friedland[9] and $340.00 for attorney Jaime R. Vining. Motion at 6. In support of the requested hourly rates, the plaintiff submits the Declaration of David K. Friedland in Support of Plaintiff's Verified Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 135-1, 2/2/21) (hereinafter "Friedland Decl."), the curricula vitae for Mr. Friedland (DE# 135-2 at 59-62) and Ms. Vining (DE# 135-2 at 64-69) and the American Intellectual Property Law Association's Report of the Economic Survey 2019 (DE# 135-2 at 71-75).[10]

---

[9] Mr. Friedland's rate fluctuated between $440.00 and $550.00 per hour. <u>See</u> Billing Entries (DE# 135-2 at 2-55, 2/2/21).

[10] Mr. Friedland describes this document as "a survey of costs, fees, income and other economic information conducted bi-annually by the American Intellectual Property Law Association" which, <u>inter alia</u>, "sets out hourly rates for intellectual property attorneys by type of practice and location of primary place of work, along with the costs of various types of litigation." Friedland Decl. at ¶ 7.

The defendant does not address the reasonableness of Mr. Friedland and Ms. Vining's hourly rates.[11]

At the outset, the undersigned notes that Mr. Friedland billed at an hourly rate of $440.00 in some months and an hourly rate of $550.00 in other months. The plaintiff provides no explanation other than stating that Mr. Friedland's "rate fluctuated between $440 and $550 during the course of this representation." Motion at 6 n. 2. This is not a case where Mr. Friedland's hourly rate increased during the course of the litigation. The first time Mr. Friedland billed at $550.00 per hour was in the April 2019 billing entries. See Billing Entries (DE# 135-2 at 24-26). However, in the February 2020, April 2020, May 2020 and June 2020 billing entries Mr. Friedland's hourly rate was again $440.00. Id. at 41-44, 47-53.

In any event, the undersigned finds that $550.00 and $440.00 are both reasonable hourly rates for Mr. Friedland based on his background, experience and the prevailing market rates in the community. See Domond v. PeopleNetwork APS, 750 F. App'x 844, 848 (11th Cir. 2018) (affirming fee award in "exceptional" case under the Lanham Act which included hourly rates of $425 and $675 because the movant had "provided evidence that its counsel's rates were comparable to the prevailing market rate in Miami for trademark litigation services by lawyers of reasonably comparable

---

[11] In the defendant's response to the Submission, the defendant argues that the plaintiff includes "what appears to be a claim for hourly fees by Plaintiff's counsel for work that was not billed to Carnival by the Friedland Vining firm." Response to Submission at 2. This seems to be an objection to Mr. Friedland's hourly rate being $550.00 in some months and $440.00 in others. Mr. Friedland's declaration makes clear that both rates were paid by Carnival. See Friedland Decl. at ¶ 5 (attesting that the billing "invoices were presented to Carnival on a monthly basis as reflected by each invoice's date and Carnival in turn paid each of these invoices per the terms of representation between Carnival and [Mr. Friedland's] firm."). Therefore, it is not the case that the plaintiff is seeking to recover more fees from the defendant than were paid by the client.

skills, experience, reputation, and role in the litigation").

The undersigned recognizes that Mr. Friedland and Ms. Vining are skilled attorneys. Mr. Friedland and Ms. Vining are Florida Bar Board-Certified Intellectual Property attorneys. Friedland Decl. at ¶ 4. Mr. Friedland was admitted to the Florida Bar in 1989 and has approximately 32 years of legal experience. Id. Ms. Vining was admitted to the Florida Bar in 2006, has approximately 14 years of legal experience and is an adjunct professor of trademark law at the University of Miami School of Law. Id.; Motion at 9.

Having considered the plaintiff's filings, counsels' reputation and experience in the applicable legal area and the Court's familiarity with fees in general, the undersigned finds that the hourly rates of **$440.00** and **$550.00** for Mr. Friedland and **$340.00** for Ms. Vining are reasonable.

### 2.    Hours Reasonably Expended

The Court must next evaluate the plaintiff's requested fee for reasonableness in terms of the total number of hours expended by the plaintiff's counsel. As noted above, the plaintiff's corrected fee request is $280,129.00. See Footnote 4, supra. This amount includes the $22,572.00 in attorney's fees previously requested in the plaintiff's Submission. See Motion at 6, n.1. Therefore, it is not necessary for the Court to separately address the $22,572.00 requested in the Submission.

The Court must exercise independent judgment when reviewing a claim for hours reasonably expended. Norman, 836 F.2d at 1301-02. Hours deemed to be "excessive, redundant, or otherwise unnecessary" should be excluded. Id. at 1301. The Court is not permitted "to be generous with the money of others, and it is as much the duty of [the C]ourt[ ] to see that excessive fees and expenses are not awarded as it is to see

that an adequate amount is awarded." Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999).

It is important to keep accurate and current records of work done and time spent on a case, especially when a third party—someone other than the client—may pay the bills. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). If there is inadequate documentation or if the Court finds a claim for hours to be excessive or unnecessary, the Court may reduce the number of hours for which fees will be awarded. See Loper v. New York City Police Dep't, 853 F. Supp. 716, 721 (S.D.N.Y. 1994) ("where adequate contemporaneous records have not been kept, the court should not award the full amount requested").

The plaintiff requests reimbursement for a total of **697.55 hours** of attorney time (327.95 hours billed by attorney Friedland and 369.60 hours billed by attorney Vining). Motion at 6. The plaintiff supports its fee request by submitting itemized billing records. See Billing Entries (DE# 135-2 at 2-55, 2/2/21). The plaintiff argues that "[h]ere, the time spent is documented with sufficient particularity so that the Court can assess the time claimed for each of the activities undertaken in this matter." Motion at 11. The plaintiff defends its use of block billing by stating that "although the entries in Carnival's invoices were not all broken down into individual tasks, they include a thorough description of the activities performed, such that the Court can ascertain the division of work." Id. at 12.

The defendant objects to the number of hours expended by the plaintiff and argues that "multiple billing entries submitted by Plaintiff in support of its motion for fees . . . reflect either excessive, vague or block billing of hours expended by Plaintiff's

counsel." Response at 1.[12] The defendant specifically objects to approximately 93 billing entries which use to the words "attention to," which the defendant argues "does not convey the actual activity undertaken by Plaintiff's counsel." Id. at 2. The defendant proposes that "fees in connection with these [approximately 93 time] entries should either not be considered or reduced by the Court." Id. With respect to the block billed entries, the defendant notes that "[t]hese types of entries have been held to be vague by Courts in this district, and accordingly, they may be omitted or reduced by the Court." Id. at 3. The defendant also attached Exhibit B to its response, which the defendant contends "highlights the more glaring example of Plaintiff's block billing." Id. at 3 n. 5.

The defendant further argues that the plaintiff's fee request is disproportionate to the relief obtained. Response at 1 n. 2. The defendant asserts that the "Plaintiff's request for more than $280,000 for a $40,000 judgment is excessive on its face." Id. The defendant does not address the fact that in addition to a monetary award, the plaintiff also obtained injunctive relief against the defendant. The defendant's months' long violation of the Permanent Injunction and the plaintiff's need to enforce the terms of the Permanent Injunction suggest to the undersigned that the injunctive relief obtained by the plaintiff in the instant case had value to the plaintiff and was needed given the defendant's initial non-compliance with its terms.

In its Reply, the plaintiff insists that "there are no objectionable tasks that need to be eliminated from the computation of counsel's hours." Reply at 5. The plaintiff states

---

[12] In a footnote, the defendant also states that she "incorporates by reference her previous arguments filed disputing the Court's finding of exceptionality." Response at 1 n. 1. The issue before the Court is the reasonableness of the plaintiff's fee request. The Court has already determined that the plaintiff is entitled to reasonable attorney's fees. See Order (DE# 121, 9/9/20); Order (DE# 129, 11/18/20). The Court should decline the defendant's invitation to relitigate matters which have already been adjudicated.

15

that "none of McCall's baseless objections regarding excessive, vague or block billing of hours" justifies a reduction in Carnival's reasonable fee application." Id. at 2 (internal quotation marks omitted). The plaintiff further insists that the Court should not make reductions to block billed time entries because "the objected time entries are so well-detailed and informative that the lack of segregation does not interfere at all with the Court's task to determine the reasonableness of the time spent." Id. at 5. The plaintiff notes that "many of the time entries objected to by McCall are for short periods of time under a few hours and identify tasks, such as conducting legal research and then drafting briefs or motion practice" and that "[i]t is readily apparent that the tasks described in each of the objected entries are 'intertwined or otherwise sufficiently related to one another to warrant summary in a single time entry.'" Id. (quoting Henns v. Mony Life Ins. Co. of Am., 2012 U.S. Dist. LEXIS 63622, *2 (M.D. Fla. Apr. 13, 2012)). Lastly, the plaintiff argues that its use of the words "attention to" in some of its time entries is not "vague" because this description should be "viewed in conjunction with the surrounding time entries." Id. at 6.

The undersigned has carefully reviewed the billing records submitted by the plaintiff and finds that the time entries were, for the most part, contemporaneous, complete, standardized and accurately reflect the work done by each attorney. Nonetheless some reductions to the plaintiff's fee request are warranted to account for block billing and excessive time spent on certain tasks.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). "[T]he district court is to apply either method, not both." Id. at 1351. "[I]n cases '[w]here fee documentation is voluminous,' it [would] not be feasible to require a court to 'engage in such a precise review.'" Villano v. Cty. of Boynton Beach, 254 F.3d 1302, 1311 (11th Cir. 2001) (quoting Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994)). The hours submitted by the plaintiff in this case total 697.55 hours. Therefore, an across-the-board cut rather than an hour-by-hour analysis is appropriate. See Villano, 254 F.3d at 1311 (finding that "569.30 hours for compensation" were "extensive enough that [the Eleventh Circuit] [did] not expect the district court or the magistrate judge to conduct an hour-by-hour analysis").

The undersigned does not find merit in the defendant's objections to the time entries which use the words "attention to" and finds that when these words are read in context with the surrounding tasks, the work performed by the attorney is clear. Nonetheless, and as discussed below, the undersigned does find significant reductions to the plaintiff's billing records are warranted to account for block billed entries and excessive time spent on certain tasks.

The majority of the plaintiff's billing entries were block billed. "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC, 476 F. App'x 198, 203 (11th Cir. 2012). Block billing "mak[es] it difficult to ascertain how much time was spent on each task." Office of the Attorney Gen. v. Moving & Storage Accounting Inc., No. 18-CV-63144, 2020 WL 5217183, at *4

(S.D. Fla. Aug. 14, 2020), report and recommendation adopted, No. 18-CIV-63144-RAR, 2020 WL 5215151 (S.D. Fla. Aug. 31, 2020). Block billing also "results in imprecision in an attorney's records." Prince v. Marson, No. 8:19-CV-549-T-35AAS, 2020 WL 1891191, at *2 (M.D. Fla. Apr. 16, 2020) (citation and internal quotation marks omitted).

The plaintiff insists that its block billed time entries should not be reduced because "the lack of segregation does not interfere at all with the Court's task to determine the reasonableness of the time spent." Reply at 5. However, and as illustrated below, the undersigned finds that the block billed entries do make it difficult for the Court to ascertain the amount of time spent on each task. The plaintiff also insists that "the tasks described in each of the objected entries are 'intertwined or otherwise sufficiently related to one another to warrant summary in a single time entry." Id. at 5 (citation omitted). Notwithstanding this assertion, a cursory review of the billing entries shows that many of the blocked billed entries are comingled with different tasks such that it is impossible for the Court to determine the reasonableness of the time expended on each task.

For example, preparing the Joint Scheduling Report/ESI agreement and drafting discovery are not sufficiently related to warrant commingled block billed entries. On December 20, 2018, Ms. Vining billed 6 hours and 18 minutes for "atten[ding] to email correspondence from opposing counsel regarding revisions to draft Joint Scheduling Report and proposed ESI agreement" and "[p]repar[ing the] First Request for Admission, First Request for Production of Documents and First Set of Interrogatories." See Billing Entries (DE# 135-2 at 6-7, 2/2/21). On December 21, 2018, Ms. Vining again commingled the preparation of the Joint Scheduling Report with drafting written

18

discovery into a single time entry totaling 7 hours and 12 minutes. Id. at 7. These two time entries total 13 and a half hours of attorney time. It is not possible for the Court to determine how many of these 13 and a half hours were spent working on the Joint Scheduling Report/proposed ESI agreement and how much time was spent drafting written discovery.

The difficulty in ascertaining the reasonableness of the time spent on each task is further compounded by the surrounding time entries. In the three days preceding the above, commingled time entries, Ms. Vining and Mr. Friedland also spent time working on the Joint Scheduling Report/ESI agreement. On December 17-19, 2018, Ms. Vining and Mr. Friedland spent a total of 14 hours and 18 minutes (6 hours on December 17, 2018, 3 hours on December 18, 2018 and 5 hours and 18 minutes on December 19, 2018) performing work related to the Joint Scheduling Report and proposed ESI agreement. See Billing Entries (DE# 135-2 at 6, 2/2/21). On December 20, 2018, Mr. Friedland spent an additional 1 hour and 12 minutes "[c]onfer[ing] with opposing counsel regarding final versions of required scheduling documents to be filed with Court." Id. at 7. Leaving aside the commingled time entries discussed in the preceding paragraph, Ms. Vining and Mr. .Friedland spent 15 hours and a half on work related to the Joint Scheduling Report/ESI.

In addition to problematic block billing, reductions should also be made for excessive time spent on certain tasks. The undersigned notes that the Joint Scheduling Report was a 7-page document accompanied by a 2-page proposed order and a 5-page ESI. See Joint Scheduling Report (DE# 20, 12/21/18). Fifteen and a half hours of attorney time working on the Joint Scheduling Report/ESI is an excessive amount of time, even without considering the December 20-21, 2018 commingled time entries

where Ms. Vining and Mr. Friedland worked on both the Joint Scheduling Report/ESI agreement and drafting discovery.

There are other examples of commingled block billing entries which reflect time billed for unrelated tasks. For instance, on December 28, 2018, Ms. Vining billed almost two hours (1 hour and 54 minutes) for work related to preparing written discovery and for reviewing the five-page Scheduling Order (DE# 22, 12/28/18) and the four-page Order of Referral to Mediation (DE# 23,1/28/18) and "[d]ocket[ing] deadlines related to same." See Billing Entries (DE# 135-2 at 8, 2/2/21). Ms. Vining's work preparing written discovery was unrelated to the Court's Orders and should not have been billed in a single time entry. Incidentally, on the same day, Mr. Friedland billed 1 hour and 48 minutes for essentially the same tasks performed by Ms. Vining: reviewing and "confirm[ing] calendaring" the same two Orders. Id.

Another example of commingled block billing which makes it difficult for the Court to ascertain the reasonableness of the amount of time spent on a particular task are the time entries related to the defendant's motion to stay discovery (DE# 27, 1/10/19) and the defendant's motion for reconsideration, to dismiss or in the alternative for judgment on the pleadings (DE# 28, 1/10/19). Both motions were filed on January 10, 2019. The motion to stay discovery (DE# 27) was a relatively short eight-page motion. The plaintiff's response (DE# 30) to the motion to stay was also eight pages. The defendant's other motion—the motion for reconsideration, to dismiss or in the alternative for judgment on the pleadings—was lengthier (23 pages) and required a longer response (DE# 29) from the plaintiff (15 pages). Ms. Vining and Mr. Friedland did not separate the hours they spent on work related to the two motions. See Billing

Entries (DE# 135-2 at 10-12, 2/2/21).[13] Naturally, the work related to the defendant's motion for reconsideration, to dismiss or in the alternative for judgment on the pleadings (DE# 28, 1/10/19) would have required more time than the work related to the defendant's motion to stay discovery (DE# 27, 1/10/19). However, because the plaintiff's attorneys commingled the work related to both motions it is impossible for the Court to determine how much time the plaintiff's attorneys devoted to each motion.

In addition to problematic block billing, reductions should also be made for excessive time spent on work related to the motion to stay discovery (DE# 27, 1/10/19) and motion for reconsideration, to dismiss or in the alternative for judgment on the pleadings (DE# 28, 1/10/19). These commingled time entries total 36 hours and 51 minutes (9 hours and 9 minutes on January 8, 2018 plus 16 hours and 54 minutes on January 10, 2019 plus 10 hours and 48 minutes on January 11, 2019). Id. at 10-12. This is an excessive amount of time to spend on these tasks given the nature of these motions.

Other examples of excessive time include the work related to preparing the summary judgment motion. The plaintiff's attorneys billed approximately 46 hours and 21 minutes (13 hours 42 minutes on February 21, 2019, 7 hours and 42 minutes on February 22, 2019, 8 hours and 24 minutes on February 26, 2019, 2 hours and 18 minutes on February 27, 2019, 2 hours and 12 minutes on March 5, 2019, 4 hours and 27 minutes on March 6, 2019, 2 hours and 54 minutes on March 7, 2019 and 4 hours and 42 minutes on March 8, 2019) for preparing Carnival's Motion for Summary

---

[13] They also commingled their time entries with work related to the mediation and reviewing the Court's two-page Order (DE# 26) denying the defendant's motion for leave to amend the answer. See Billing Entries (DE# 135-2 at 10-11, 2/2/21).

Judgment (DE# 36, 3/8/19). <u>See</u> Billing Entries (DE# 135-2 at 16-20, 2/2/21). This is not an exact calculation because included in these blocked billed entries are email correspondence with opposing counsel regarding discovery requests and work related to the preparation of the motion to seal. <u>Id.</u> at 17-19.

The motion for summary judgment was 20 pages and was supported by approximately 360 pages of exhibits including two affidavits and a statement of undisputed material facts. Nonetheless, 46 hours and 21 minutes for preparing the summary judgment motion is excessive.

The undersigned further notes that the motion for summary judgment was filed fairly early in the proceedings, approximately four months after the Complaint was filed. The motion for summary judgment was supported, in part, by the defendant's failure to timely respond to a request for admissions and no depositions were taken in the case. As the plaintiff notes in its Motion, at the time, "McCall [had] served her responses to Carnival's First Request [for] Production, as well as several hundred pages of responsive documents," but "[had] not serve[d] any responses to the First Request for Admissions or First Set of Interrogatories." Motion at 3. Thus, this was not a case where the movant had to review multiple deposition transcripts or sift through a voluminous record developed over a lengthy period of time.

Another example of excessive billing was the amount of time spent preparing the Plaintiff's Motion for Entry of Permanent Injunction and Monetary Damages Against Defendant (DE# 51, 4/8/19). The plaintiff's attorneys billed approximately 23 hours 48 minutes (6 hours and 18 minutes on April 4, 2019, 8 hours and 12 minutes on April 5, 2019 and 9 hours and 18 minutes on April 8, 2019) for preparing the plaintiff's 16-page motion for entry of a permanent injunction and five-page proposed order. <u>See</u> Billing

Entries (DE# 135-2 at 24, 2/2/21).The undersigned finds that 23 hours and 48 minutes for preparing this motion and proposed order is excessive. These hours only include the preparation of the motion and proposed order and do not include the additional hours billed reviewing the defendant's response, preparing the reply or preparing for and attending the hearing on the motion for permanent injunction.

The plaintiff's attorneys also spent an excessive amount of time preparing the Agreed Motion to Stay Local Rule 7.3 Fees and Motion Deadlines Pending Appeal (DE# 56, 4/18/19). See Billing Entries (DE# 135-2 at 26, 2/2/21). The plaintiff's attorneys billed 9 hours and 30 minutes (3 hours and 12 minutes on April 16, 2019 and 6 hours and 18 minutes on April 18, 2019) for preparing the plaintiff's 5-page agreed motion and one-page proposed order. Id. The undersigned finds that nine and a half hours for preparing an agreed motion and proposed order is excessive.

The clearest example of excessive billing is the amount of time the plaintiff's attorneys spent preparing the Plaintiff's Local Rule 7.3 Motion for Entitlement to Attorneys' Fees and Non-Taxable Costs (DE# 113, 5/20/20). The undersigned notes that the motion was limited to the issue of entitlement and did not include fee amounts. The motion itself was 16 pages. It was accompanied by five pages of exhibits and a one-page proposed Order. Nonetheless, the plaintiff's attorneys billed 82 hours (4 hours on February 13, 2020, 3 hours and 42 minutes on February 14, 2020, 2 hours and 48 minutes on February 18, 2020, 4 hours and 48 minutes on February 21, 2020, 4 hours and 36 minutes on February 24, 2020, 4 hours and 45 minutes on February 26, 2020, 6 hours on February 27, 2020, 4 hours and 54 minutes on February 28, 2020, 5 hours and 45 minutes on February 29, 2020, 3 hours and 36 minutes on March 2, 2020, 6 hours and 48 minutes on March 5, 2020, 8 hours and 48 minutes on March 9, 2020, 2

hours and 36 minutes on March 10, 2020, 3 hours on May 12, 2020, 2 hours and 36 minutes on May 14, 2020, 2 hours and 48 minutes on May 18, 2020, 2 hours and 24 minutes on May 19, 2020 and 8 hours and 6 minutes on May 20, 2020) for work pertaining to the plaintiff's motion for fees related to the issue of entitlement to attorney's fees. See Billing Entries (DE# 135-2 at 41-42, 45, 50-51, 2/2/21).[14] Eighty-two hours is an exorbitant amount of time to spend on the issue of entitlement to attorney's fees. It would still be an exorbitant amount of time even if the time entries reflected work related to both the issue of entitlement and the amount of attorney's fees.

A significant reduction to the plaintiff's attorney's fees is necessary in the instant case to account for the widespread use of block billing and excessive billing on certain tasks. Based on the numerous examples cited above and, in particular, the 82 hours spent on the fees motion, the undersigned RECOMMENDS an across-the-board 60 percent reduction to the plaintiff's fee request. The undersigned does not make this recommendation of a 60 percent reduction lightly. However, the plaintiff's attorneys have not demonstrated good billing judgment as reflected by the examples provided in this Report and Recommendation. "[I]f fee applicants do not exercise billing judgment, courts are obligated to do it for them." Barnes, 168 F.3d at 428.

Having considered the plaintiff's filings and based on the undersigned's familiarity with fees in general, the undersigned finds that **$112,051.60** ($280,129.00 minus a 60 percent reduction) in attorney's fees is reasonable.

---

[14] This is not an inclusive summation of all of the billing entries related to the motion for attorney's fees. These time entries do not include the time entries for April 10-12, 2019 and April 15, 2019 which also relate to the preparation of the motion for attorney's fees and appears to include the "compilation of invoices incurred in connection with litigation." See Billing Entries (DE# 135-2 at 25-26, 2/2/21).

### 3.    Additional Fee Request for Preparing the Submission

The plaintiff also sought an additional $2,500.00 for preparing its Submission. Submission at 5, n. 3. The plaintiff's Submission was filed on September 29, 2020. The plaintiff' did not provide billing records for July 2020 through September 2020. Because the plaintiff's billing records do not include the time spent preparing the Submission, the undersigned RECOMMENDS that the plaintiff's request for an additional $2,500,00 be **DENIED**.

<u>**RECOMMENDATION**</u>

Based on the foregoing, the undersigned respectfully RECOMMENDS that the Plaintiff's Submission of Documents Supporting Its Reasonable Attorneys' Fees Incurred in Connection with Enforcement Proceedings (DE# 123, 9/29/20) and Carnival Corporation's Local Rule 7.3 Motion as to the Reasonable Amount of Its Attorneys' Fees Award (DE# 135, 2/2/21) be **GRANTED in part and DENIED in part**. The Court should award the plaintiff attorney's fees in the amount of <u>**$112,051.60**</u>.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Ursula Ungaro, United States District Court Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. <u>See</u> 28 U.S.C § 636(b)(1); <u>Harrigan v. Metro Dade Police Dep't Station #4</u>, 977 F.3d 1185, 1191-1192 (11th Cir. 2020); <u>Thomas v. Arn</u>, 474 U.S. 140, 149 (1985); <u>Henley v. Johnson</u>, 885 F.2d 790, 794

(11th Cir. 1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **26th** day of April, 2021.

_____
JOHN J. O'SULLIVAN
CHIEF UNITED STATES MAGISTRATE JUDGE